LOTTINGER, Judge.
This is an expropriation suit which involves the “total taking” of a home located in the 900 block of Convention Street in the City of Baton Rouge. At the time of the signing of the order of expropriation (September 27, 1957), the State deposited in the Registry of the Court the amount of $17,-300.00, representing its estimate of just compensation. The defendant filed a timely answer wherein he prayed that the value of his property be fixed at $27,500.00 and that he be awarded $10,200.00 representing the difference between the State’s deposit and his appraisal, together with the costs attendant to defending the action.
The lower court fixed the market value of the property at $24,500.00 and awarded the defendant $7,200.00 with legal interest from September 27, 1957, until paid. The trial court also awarded $450.00 and $325.-00 as fees for appraisal work of L. Heidel Brown and Verdie Reece Perkins, respectively, together with legal interest on said amounts from date of judicial demand until paid. In addition, $50.00 was awarded these experts as expert witness fees for testifying, which sums were taxed as costs. The State has appealed. The defendant has. neither appealed nor answered the appeal.
The trial judge rendered written reasons for judgment which read in part as follows :
“The first expert called by the defendant was Mr. L. Heidel Brown, a local1 realtor well known to the court. He stated that he had been engaged in the real estate business since 1932. Mr. Brown gave a rather comprehensive-description of tire house and expressed the opinion that it was ‘a luxury type residence’. See Tr. p. 27). The property was being put to its highest and best use in his estimation. He characterized the locale of defendant’s home as follows, to-wit: ‘It was a well established, you might even say prestige,, residential block.’
“This witness in applying the market data, or comparable approach, used two comparables, which he said he considered particularly applicable, both because of their proximity to the subject property and the nearness of the time element. The first, he explained, was the sale to Mrs. Lillie M. K. Hatcher of a full lot located at the southwest corner of Convention and North Ninth Streets,, the sale price being the sum of $30,000.-00. Immediately after this purchase the house located on the lot was demolished. (a full description of this, property is set forth on page 74 of the transcript). This expert gave an adjusted front foot valuation of $434.00- *468 He explained that this was only one comparable and for that reason he did not use a figure that high on the subject property. The other comparable he used was the sale from the Denny Heirs to Jimmy R. Major and George Paulat of a lot at the northwest corner of Convention and North Ninth Streets. (This property is described on page 73 of the transcript). In considering this property he made an adjustment to relate it to the subject property of $314.-00 a front foot. This witness observed: ‘Well, if you average the $434.00 front foot value and adjust it as established by the Hatcher sale with the $314.00 front foot evaluation, adjusted, as established by the Denny sale, you come up with an average front foot value of $374.00 a front foot.’ However, he did not use this figure. He scaled it down to $300.00 a front foot for the subject property. Inasmuch as the subject property had a frontage of 40 feet, this made the value of the lot $12,000.00.
“In arriving at the cost of the improvements on the subject property he used a method calling for a figure less than replacement cost, as he did not ■think it was applicable. He explained ;his method in detail as set forth on •pages 32 and 33 of the transcript. His .adjusted valuation of the residence was .$11,124.00. To this figure he added $500.00 for the garage, patio, and planting. These figures added to the sum of :$12,000.00, the value he placed on the lot, gave him a total of $23,624.00, which he said he considered to be the fair market value of the subject prop•erty as of September 27, 1957, the ■date of the taking. (See Tr. p. 33). Mr. Brown testified he did not use the income approach. He gives his reasons for not doing so on page 45 of the transcript.
“The other expert placed on the stand by the defendant was Mr. Verdie Reece Perkins, a realtor, also well known to ,the Court. This gentleman had been engaged in the real estate business in Baton Rouge since 1936. It was stipulated by the parties to this suit (Tr. 67) ‘That if questions were asked of Mr. Perkins which were asked of Mr. Brown regarding the Jones home, the type of construction, state of repair of the home, and the suitability for the purposes for which it was being used, that he would testify in response to such questions the same as did Mr. Brown’. Mr. Perkins appraised the land at $12,000.00, after using the Platcher sale and the Denny sale (the Jimmie R. Major property) as compa-rables and making adjustments. In arriving at that value, he testified he used the same general approach or formula in concluding that the land had a value of $300.00 a front foot that Mr. Brown had used.
“This witness used the replacement approach in determining the value of the house. Like Mr. Brown he found 2224 square feet in the house, which he figured at $7.75 per square foot, less 30% depreciation, which gave him a net figure of $12,065.00 for the house. He valued the garage at $250.00, the patio at $100.00, the landscaping and beautification of the yard at $250.00. His total appraisal for land and improvements on the subject property was $24,665.00. (Tr. p. 68-69).
“Mr. Perkins was asked whether he considered, in making his appraisal, any other purpose for which the sub-, ject property might be used, other than that of a home, and he answered in the negative. ‘No, sir’, he replied, T think it was used as a sale, it was saleable in my opinion as a home, and I used that approach in arriving at my opinion’.
“The plaintiff placed only one expert witness on the stand to testify as to the fair market value of the subject property. This witness was Mr. Lowell Roseman, a local realtor well known *469 to the court. It was stipulated, however, that the other appraiser employed by the Highway Department, namely, Mr. Bradley C. Mittendorf was ill and unable to be present in court and that if he were present his testimony would be the same as that of Mr. Lowell Rose-man. The stipulation included an acknowledgment by counsel for the ■defendant that because of the qualifications, training and background of Mr. Mittendorf he would meet the requirements of this court to testify as an expert witness. (Tr. 3).
“Mr. Roseman stated that he ‘was reared in the real estate and lumber business, and have been an active realtor for twelve years.’
“This witness testified that he used the market data approach and the replacement, less depreciation, approach, in determining the fair market value of the subject property. He expressed the opinion that the income approach was not applicable to this property and that it would not be fair to treat it from the income approach.
“In arriving at the replacement cost Mr. Roseman used 1063 square feet for the first floor of the dwelling at $10.00 a square foot; 1063 square feet for the second floor at $6.00 a square foot, 208 square feet for the porch at $3.00 a square foot, making a total valuation of $17,623.00. This amount was discounted by him at the rate of 50% for depreciation, which gave a net figure of '$8816.00. To this amount he added $300.00 for the garage and $150.00 for the concrete patio, making a total of $9,266.00. He rounded his out at $9300.-00 as the value he fixed for the improvements. (Tr. 88).
“Mr. Roseman placed a value of $8,-■000.00 on the lot, based on $200.00 a front foot. This figure added to the value arrived at by him for the improvements, made a total of $17,300.00 which was his appraisal value of the subject property. (Tr. 88). He used the Jimmie Major (or Denny sale) as one of his comparables. (This sale was one of the two sales used by the experts of the defendant). He said he wished to call the Hatcher (the other comparable used by defendant’s experts) to the attention of the court, but that he attached very little weight to the sale price of $30,000.00 because Mr. Hatcher told him that he had paid just about twice what the property was worth, that Mrs. Hatcher wanted to move to town from the country, and that she wanted that particular lot. (The Hatchers were not produced as witnesses, although to the knowledge of the court they both resided in the parish and were well and able to come to court had they been so ordered by court process at the instance of the plaintiff). Mr. Roseman testified that he placed a value of $10,900.00 on the house located on the Major property. He admitted he inspected only the first floor of this house, that he did not know how many square feet the house contained. He placed this valuation on the dwelling on the Major property as contrasted to the value of $9300.00 which he fixed for the improvements on the subject property. (Tr. 102). On cross-examination he admitted that the Denny (Major) property ‘did not compare in appearance to the Jones property. The Jones property has been a well-kept piece of property and had a lived in appearance like a home, whereas the other was a rooming house type’.
“Mr. Roseman used as his second comparable a two-story house located at No. 2174 Wisteria Street, admittedly twenty-two blocks from the subject property. The house rests on a corner lot, as Mr. Roseman stated, but he did not mention the fact that the street which runs along the east side of the house is a narrow one without sidewalks and the side of the house is *470 right on the street. This circumstance, in the opinion of the court, detracts from its desirability as a home and affects its value adversely to a considerable degree.
“The third comparable selected by this expert was located at No. 637 St. Ferdinand Street, a distance of twelve blocks from the subject property. It was a two-story house used as three apartments. This property was in an area inferior to that of the plaintiff’s property, as the witness admitted. When asked why he chose to use this property, which was so far removed from that of the subject property, Mr. Roseman’s reply was: T felt that the house was somewhat comparable, being a two story house in good condition’. This property is located next door to a filling station.
“In my opinion the court is justified in accepting the value of $12,000.00 placed on the land by the landowner’s two expert witnesses, Messrs. Brown and Perkins. This sum was based on $300.00 per front foot. The two experts for the Highway Department, Messrs. Mittendorf and Roseman place a valuation of $8000.00 on the land, based on $200.00 per front foot. This lower value was undoubtedly due to the fact that they both failed and refused to use the Hatcher sale as a comparable. The price that the Hatcher’s paid ($30,000.00) was for the land alone, as the improvements thereon were salvaged without profit to them. It is the decision of this court that that sale represented the market value, or the price which would be agreed upon at the voluntary sale between a willing seller and a willing purchaser, taking into consideration all available uses to which the land might be put. ‘State through Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21 and cases cited therein. See also comprehensive Comment, ‘Expropriation — a Survey of Louisiana Law, 18 La.Law Rev. 509 (1958) at 538 et seq.’ This Hatcher sale was from a willing seller to a willing purchaser.
“With regard to the improvements on the subject property the court feels that the valuation placed thereon by the experts for the Highway Department is too low. Mr. Roseman in figuring the replacement cost less depreciation of the house used a depreciation of 50%, although he admitted the house was in very good condition. By way of stipulation, Mr. Mittendorf used the same percentage of depreciation. On the other hand, the two experts for the landowner used a depreciation of only 30% in figuring the replacement cost less depreciation. In view of the testimony on this point and the personal knowledge of the court as to the condition of the house on the subject property and after personally viewing the comparables, the court is of the opinion that the value of the house at the time of the taking was $12,000.00. To this sum must be added the sum of $500.00 to cover the cost of the garage, patio and landscaping. These figures for the land, the house, garage and patio total the sum of $24,-500.00, which amount in the opinion of the court was the true market value of the- entire property at the time of the expropriation.” (Tr. pages 44-50).
We agree with the Trial Judge’s findings that the comparables used by defendant’s experts, covering properties very close to the subject property, are better guides in determining value than those relied on by the State and find, therefore, that his conclusions concerning value are correct.
There remains the question of whether the expenses of the landowner incurred for experts preparatory to trial should be handled as an item of costs or as damages, as held by the trial judge. In State, Through Department of Highways v. Barineau, 225 La. 341, 72 So.2d *471 869, the Supreme Court commented as follows:
“To hold that the owner must pay his own costs in resisting attempts to take his land without his consent would nullify to a certain extent the constitutional guarantee of just and adequate compensation, Art. 1, Sec. 2, La.Const. of 1921, which ‘clearly contemplates that the class of expenses usually taxed as costs should be included as an element of the owner’s damage * * Westwego Canal & Term. Co. v. Louisiana Highway Comm., 200 La. 990, 9 So.2d 389, 392; see, also, Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612; Gulf Shipside Storage Corp. v. Thames, 217 La. 128, 46 So.2d 62.” (Emphasis supplied).
From the above and foregoing it would appear that the holding of the trial judge in this respect was correct.
There is no manifest error in the judgment appealed from and the same is therefore affirmed.
Judgment affirmed.