HERGET, Judge.
The City of Houma, Louisiana in its capacity as owner and operator of a municipal electrical generating and distribution system, instituted this suit to expropriate Lot 2, Block 76 situated on Honduras Street in Houma, jointly owned by Marcus Bolden, Jr., Isiah Bolden, Zenobia Bolden, Willie Bolden, Clarence Bolden, Wilfred Jackson and Earl Bolden for the purpose of erecting *8 an electrical substation. The City alleged it had been unable to contact or obtain the consent of the Defendants prior to the filing of this petition and prayed that the Court establish the fair value of the property and award to the City fee simple title thereto upon the deposit by it in the registry of the court the compensation so fixed.
From a judgment in favor of Plaintiff and against Defendants adjudicating to Plaintiff the title to the property upon the payment into the registry of the court for the account of Defendants the sum of $4,-600 and fixing the fees of the experts called by Defendants in the sum of $75 each and taxing same as costs, Defendants perfected their appeal to this Court.
In the Trial Court as well as in the briefs filed in this Court by Defendants, Defendants questioned the right of the City to expropriate the property; first, on the basis that no negotiation was had with Defendants to obtain title to the property expropriated prior to the institution of the suit; and, secondly, they raised the issue as to the necessity for the particular expropriation. In the Trial Court Defendants’ contentions on these two issues were decided adversely to them and the case was heard on its merits. In this Court, however, though the issues had been raised as aforesaid, counsel for Defendants, in their oral arguments, abandoned these contentions and conceded the only issues before this Court are those of quantum and the amount to be awarded to Defendants’ expert appraisers for services rendered in their behalf.
It is now well settled in Louisiana that in an expropriation proceeding the compensation to be awarded by the court is the market value of the property expropriated and the best indicia of such value is that arrived at upon giving consideration to the expert testimony of witnesses in the case anchored on sales by willing sellers to willing purchasers comparable in value to that of property subject to expropriation. In the absence of comparable sales, secondary evidence predicated on the general knowledge of the appraiser of the values of land in the vicinity or the utilization of a theoretical capitalization of income approach may be resorted to.
We are indebted to the Trial Court for a very excellent and detailed historical commentary on the growth of the City of Houma and the locus of subject property. However, as admittedly the Trial Court observed in its reasons, many of the facts related by it had not been introduced in the testimony. We can only give consideration to the evidence in the record. State through Dept. of Highways v. Kemp, La.App., 141 So.2d 487, and the concurring opinion of Herget, J. in State v. Bjorkgren, La.App., 147 So.2d 905.
The subject property is a corner lot having a front on the south side of Honduras Street of 116 feet and a front of 60 feet on the west side of Grinage Street in the City of Houma. At the time of the expropriation there were no improvements on the property; however, same was zoned commercial.
The City called as its expert appraiser Mr. Edward N. LeBlanc, a realtor in Houma. He observed there were no commercial developments now existing in the immediate locality and depicted the locale as having rent houses, rooming houses, bars, package liquor stores and located in an area predominately inhabited by the colored race. He conceded the property is now zoned commercial and though Honduras Street became one of the arteries leading to the tunnel under the Intercoastal Canal thereby increasing traffic thereon, his opinion was such traffic would be through traffic and not necessarily composed of individuals interested in making purchases at a commercial establishment. Mr. LeBlanc found no recent sales on Honduras or Grin-age Streets and declined to use sales on Lafayette Street, contending that, while said street was only a block away, same was not comparable to property located on *9 streets abutting Defendants’ lot as said lot was in a colored neighborhood, whereas the property on Lafayette Street did not present such restriction. He was leery of the approach that the value of the subject property could be ascertained by giving consideration to sales made by willing sellers to willing purchasers, predicating his belief on the fact many willing purchasers mistakingly pay in excess of the value of the property purchased. Though he used as comparables appraisals made in successions of neighboring property, he mostly relied on the theoretical capitalization value of Defendants’ land speculating as to the rental value resulting from the erection of a building thereon. We observe that in our opinion appraisals in succession matters do not truly represent market value for they do not necessarily reflect a value fixed as in voluntary sales between willing purchasers and willing sellers. His evaluation of the subject property was $4,000.
Plaintiff’s other expert, Mr. F. P. Theriot, a realtor in Houma, being of the opinion the locale wherein subject property is, was not comparable to property on Lafayette Street located one block north of subject property, as subject property was in á predominant Negro neighborhood and presently had no possibility for commercial development. His arrival at the figure of $4,-000 as the value of subject property was therefore predicated upon his belief the property had no commercial value, though, concededly, it was and is zoned commercial.
Mr. Hartwell A. Lewis, Sr., likewise a realtor in Houma, called as an expert by Defendants, was of the opinion the locale was more properly described as a mixed neighborhood containing both white and colored families and in the immediate vicinity he referred to several commercial establishments operated by white people. 'By the use of sales of property he considered comparable to that of subject property, he arrived at a value of $112.20 per front foot for the subject property using the 116 feet fronting on Honduras Street, making a total of $13,015.20 to which he added 10% or $1,301.52 as the property was a corner lot, giving a total estimated market value of $14,316.72. In arriving at his valuation he used as a comparable a sale from Nathan N. Land to King Solomon Lodge No. 14 Free and Accepted Masons of a tract of land measuring 60 feet front on Lafayette Street by a depth of 116 feet, the sale price being $9,500. This was an inside lot and at the time of the sale had a building thereon for which the lodge was offered $200. It refused the offer, and subsequently one of the members offered $600, which price was accepted but was considered by the lodge members to be a gift. He concluded the value of the lot at the time of the sale was $150 a front foot arrived at by dividing $9,000 by 60 front feet. Because, subsequent thereto, a paved road had been constructed, subsurface drainage had been installed on Honduras and Bond Streets and a tunnel had been opened under the Inter-coastal Canal, the value of the comparable property in his opinion now is $200 a front foot. As a second comparable Mr. Lewis referred to a sale from Edward N. Le-Blanc to Logan Babin of a portion of Lot 2, Block 50 in the City of Houma, measuring 38 feet front on Lafayette Street by a depth of 116 feet. He testified at the time of the sale there was located on the property a building in bad condition and Mr. Babin had offered Mr. LeBlanc $8,500 for the bare land which he refused but accepted the offer of $10,000 for which the sale was made. He placed a value, therefore, of $223 a front foot as of the date of the sale, January 25, 1960 and in his opinion because of the improvements referred to, because of the increase in value of properties in this locale, he was of the opinion the value of the subject property on the date of his testimony was $240 a front foot. As a third comparable, he referred to a sale from Miss Maude M. Daspit to Conrad Picou of property located on Honduras Street measuring 250 feet front thereon by a depth of 120' feet for a price of $36,000. This sale was. on June 1, 1959, at which time the street was shelled, open ditches thereon and the *10 tunnel referred to bad not been opened. On the date of the trial of this case, he placed a value on this property of $200 a front foot. On cross examination counsel for Plaintiff offered in evidence a sale of Lots 1 and 3 on Lafayette Street, located north of Defendants’ property, the sale price being $10,000 for both of the lots which would indicate the valuation arrived at from the comparable offered by Mr. Lewis was excessive. However, though counsel for Plaintiff chided Mr. Lewis for failure to produce the referred to sale as a comparable, no reason was given for the failure on the part of Plaintiff to likewise use said sale as a comparable with the exception of their contention property on Lafayette Street was not comparable to that located on Honduras Street.
Defendants also called as an expert appraiser Mr. J. Louis Blouin who was of the opinion the subject property is located on what he believes will be one of the main arteries of traffic in the City of Houma due to the completion of the tunnel under the Intercoastal Canal and in his testimony he referred to the comparables previously referred to by Mr. Lewis, the sales from LeBlanc to Babin and from Daspit to Picou and, in addition, gave consideration to a sale by the Succession of Hebert to Sam Morello et al. of Lot 6, Block 72 having a front of 60 feet on Barrow Street which is one block north of Honduras Street and several blocks east of Defendants’ property. This sale was for the price of $250 per front foot. He also gave consideration to a sale from Joffrion et al. to Moosa in 1961 of Lot 4, Block 6 having a front of 60 feet on Canal and Point Streets which is located four blocks north and one block west of Defendants’ property, the price representing a consideration of $110 per front foot. He was of the opinion that inasmuch as Honduras Street was formerly a shelled street whereas at the date of the trial the street was paved and had sidewalks, property fronting on Honduras and Bond Streets, though only one way arteries, was rapidly increasing in commercial value comparable to property on Lafayétte Street.
Though, for the reasons given by the experts, subject property in our opinion is not equal in value to comparables tendered by the expert appraisers on behalf of Defendants, such sales do, in our opinion, make evident the fact that subject property is worth far in excess of the appraisals of $4,000 made by Plaintiff’s appraisers. Therefore, weighing the views expressed by all of the experts and giving consideration to the sales which were offered as compar-ables, we believe a fair valuation of subject property to be $7,656, arrived at by evaluating the 116 feet frontage on Honduras Street at $60 per front foot or $6,960 and, as subject property is a corner lot, adding thereto, 10% or $696, making a total of $7,656.
Learned counsel for Plaintiff maintains that the Trial Court was in error in assessing as costs the fees of the expert witnesses and taxing same to Plaintiff. In support of his argument he relies on LSA-R.S. 13:4521, reading:
“Except as hereinafter provided, neither the state, nor any parish, municipality, or other political subdivision, public board or commission, shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state or any such parish, municipality or other political subdivision, board or commission. This Section shall have no application to stenographers’ costs for taking testimony.”
As authority for the position, counsel cited Cook v. City of Shreveport, La.App., 134 So.2d 582, wherein a municipality was not required to pay court costs in the suit against it for personal injuries sustained by the Plaintiff and, in accordance with the above quoted statute, was assessed only with the stenographer’s cost. However, the exemptions provided by this statute are not applicable in expropriation proceedings *11 wherein the State or political subdivisions under LSA-R.S. 19:12, providing:
“If a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation, the costs of the expropriation proceedings shall be paid by the owner.”
is required to make tender of the true value of the property expropriated to prevent the assessment of costs of the proceeding against it. Inasmuch as Plaintiff failed to tender the true value of the property expropriated to Defendants herein, it is liable for the costs.
In the recent case of State through Dept. of Highways v. Jones, La.App., 138 So.2d 466, this Court affirmed a decision of the Trial Court which fixed the fees of Defendant’s expert appraisers for work done preparatory to trial, assessed same as damages, and fixed the fees for their appearance in court at $50 each and taxed same as costs. On application of the Department of Highways, the Supreme Court granted writs and on November 5, 1962 in State v. Jones, 146 So.2d 414, that Court opined such expenses were properly categorized as costs taxable to the State and accordingly held the award for such items should be taxed as costs, but not damages, and that therefore legal interest from judicial demand on these amounts was deleted from the judgment.
Defendants’ expert witnesses were in court two days during the trial of this case and without question had done much work preparatory to the trial. Accordingly, we are of the opinion for such services they are entitled to fees of $200 each.
For these reasons, the judgment of the Trial Court is amended so as to award Defendants a total of $7,656 as just compensation for the value of their lot and to fix the fees of the experts at the sum of $200 each and tax same as costs. In all other respects the judgment is affirmed at the cost of Plaintiff.
Amended and affirmed.