LANDRY, Judge.
This is an expropriation proceeding in which plaintiff, the expropriating authority (Commission), appeals the judgment fixing the value of an 11.65 acre tract taken from defendant-owner (Appellee) in the sum of $93,400.00. Appellee has answered the appeal praying that the value of her property be fixed in the sum of $141,167.00. We affirm.
The Commission alleges the trial court erred in failing to hold that a portion of the price paid for the comparable primarily relied upon in fixing value was due to the probability of a rezoning of the comparable to a less restrictive classification which rezoning did subsequently occur and greatly enhanced the value of the comparable. In this regard, the Commission urges that the trial court erred in declining to take judicial cognizance of a municipal ordinance adopted January 26, 1972, after trial of this matter, changing the zoning classification of the comparable from A-l Residential (single family dwelling) to A-2.5 (Town House District). The Commission suggests a remand so that the ordinance may be made part of the record herein. The Commission also urges error in the trial court’s failure to fix the value of subject property at $6,500.00 per acre based on sales of similar properties at about the time of expropriation.
Appellee, on the other hand, contends the trial court erred in declining to fix the value of subject property at approximately $10,000.00 per acre based on the testimony of Appellee’s appraisers. Appellee argues that the trial court erred in fixing value on the market data approach because no true comparable sales of similar properties were shown by any of the expert witnesses. Appellee lastly contends the trial court erred in not fixing value upon the subdivision residual worth of the property as shown by Appellee’s experts.
Subject property is situated in the City of Baton Rouge within a large area bounded west by Airline Highway, north by Florida Boulevard, south by Old Hammond Highway and east by Flannery Road. It fronts on the east side of Sharp Road, a two-lane paved thoroughfare. The tract *469 contains 11.65 acres of usable property and 1.59 acres situated within Jones Creek, which lies at the rear thereof. The land is zoned A-l, Single Family Residential. It is conceded that all properties lying within the above described area, save those fronting on the four bounding streets, are likewise zoned A-l. All experts agree that the best and highest use of subject property is for development into a single family subdivision.
Appellant’s sole appraiser, Heidel Brown, using the market data or comparable approach, valued the 11.65 usable acres at $6,500.00 or $75,725.00, and the 1.59 acres in Jones Creek at $100.00 per acre or $159.00, and rounded out the total to $76,000.00. As comparables, Brown used a sale from West Sherwood Forest, Inc. to the City of Baton Rouge, in 1965, of a 1.96 acre tract fronting on Sharp Road, approximately 300 feet south of subject property for $5,102.04 per acre. The property was used to construct a fire and police station. Next Brown considered the sales of three adjacent parcels to Milburn, Inc., all dated June 12, 1969, the first being a transfer by Elizabeth and Robert Cash, and by David Grier, of a 9.70 acre tract for $5,000.00 per acre. The second transaction was from Sherbrook, Inc. to Milburn of a tract containing 9.63 usable acres for the unit price of $5,000.00 per acre. The final Milburn sale was from H. B. Harelson, Jr. and involved a 20.36 acre plot at a unit price of $5,000.00 per acre. Brown was aware the transactions from Sherbrook and Harelson to Milburn were not arms length deals inasmuch as there were interlocking interests between vendor and purchaser in these instances. In addition, Brown considered four sales to Harrison and Parnell, Inc., each involving a half-interest in two parcels of land. The first was a sale by Can-gelosi to Harrison and Parnell, Inc., on February 21, 1966, of a 26.59 acre tract for $5,300.00 an acre. On March 7, 1966, Holt B. Harrison sold the other half of this tract to Harrison and Parnell, Inc. for $5,910.00 an acre. In the third transaction, Cangelosi sold Harrison and Parnell, Inc. a half interest in 25.43 acres fronting Flan-nery Road, for $6,000.00 per acre, by act dated December 11, 1967. The remaining half was acquired by Harrison and Parnell from Holt Harrison on November 15, 1968, for $6,000.00 per acre. Again Brown was aware the Harrison sale was hot an arms length transaction.
Mr. Brown, however, relied primarily upon a sale from Mary Kleinpeter and Mary E. K. Kift to Durwood Gully, dated October 9, 1970, of a 15.76 acre tract zoned A-l Residential and located on the north side of Old Hammond Highway, approximately one and one-quarter miles from subject property. This tract contained 11.-65 usable acres and sold for approximately $7,360.00 per acre. In Brown’s opinion, part of the price was based on Gully’s expectation of obtaining a zoning change to A — 4, which is less restrictive and would permit construction of multiple family dwellings. In Brown’s view, such a zoning change would increase the value of the property at least three to four times above that paid by Gully.
Brown also considered the sale of a landlocked 3.4793 acres on March 4, 1969, from Tircuit to Broadmoor Methodist Church for $10,405.00 per acre. The property was taken from the rear of vendor’s land and sold to the church for expansion of its existing facilities. Brown placed little importance on this sale as it involved a captive buyer who could not purchase from any other source. Brown considered the Milburn sales most comparable with subject property, and making a 30% adjustment for the time factor, greater accessibility of subject property and scarcity factor at time of taking, reached a value of $6,500.00 per acre for subject property.
Mr. Brown conceded there was little, if any, likelihood of a zoning change being granted for subject property or any other property in the area unless it fronted on one of the four bounding streets. In Brown’s opinion, it was reasonable to expect that a zoning change could be obtained for the Gully property since it *470 fronted on one of the perimeter streets, and most property so situated was zoned less restrictive than properties on the interior of the general area. Brown acknowledged that subject property would net a profit of about $80,000.00 if developed for a residential subdivision, but that he did not use this approach in his appraisal because he found sales of comparable properties. Brown admitted knowledge of the failure of an attempt to rezone a tract of land situated at the corner of Sharp Road and Old Hammond Highway.
Using the market data approach, defendant’s expert, Charles H. Farrier, appraised subject property at $10,000.00 per acre, or $116,500.00. He considered the Gully sale comparable from the standpoint of size and shape, but deemed it inferior by $2,000.00 an acre because of location. He stated subject property was located nearer to schools, churches and major shopping centers, and the homes in the vicinity of subject tract were in the $40,000.00 to $100,000.00 class whereas those near the Gully property were of considerably less value. Farrier also noted that the Gully tract was across the highway from an undeveloped wooded area. Based on the Gully sale, Farrier concluded subject property is worth $9,500.00 per acre. Farrier also considered the sale of a 54 acre tract from John S. Herget to Burk Development Company, on December 11, 1969, for approximately $7,239.00 per acre. He considered the Herget property inferior to subject tract because of relative isolation, and also reduced the Herget property $2,000.00 an acre because of its larger size. As compared to the Herget plot, Farrier valued Appellee’s land at $10,882.00 per acre. Farrier did not consider any of the Milburn transactions as comparables because he did not consider the sales of the Harrison’s interests therein sold to be arms lengths transactions.
Mr. Farrier considered the sale of the Tircuit tract, but adjusted that transaction downward by $5,000.00 per acre because he deemed the purchaser a captive buyer. Based on the Tircuit sale, Farrier appraised subject property at $14,405.00 per acre. Farrier also considered a sale from Eugene W. Shaffer, III to Sherwood Baptist Church, dated July 2, 1968, involving 4.21 acres, at a unit price of $10,688.00 per acre. Making certain adjustments for differences, he determined the value of subject tract to be $10,750.00 per acre. It is clear that in determining value on the market data approach, Farrier relied primarily upon the Gully transaction as a comparable, although he did consider the other transactions mentioned.
In corroboration of his valuation based on comparable sales of similar properties, Farrier employed the residual subdivision approach pursuant to which he found a residential subdivision of subject property would result in lots bringing $100.00 per front foot. He found that a subdivision would produce 24 lots having a total of 2,355 front feet, or total resale value of $235,500.00. Farrier calculated development costs at $54,800.00 and stated the developer was entitled to a profit of 25% of gross sales, leaving $121,825.00 attributable to the value of the land or $10,457.00 per acre.
Farrier discounted entirely the fact that the price of the Gully sale was affected upward by the possibility of zoning change to a classification less restrictive than A-l Single Family Residential. He conceded that a change to a less restrictive class would increase the value of the Gully tract by three to four times. He also stated that, in his experience, one can never tell the outcome of a request for a zoning change, and that the possibility of a change is speculative, to say the least.
Appellee also produced John Lejeune, Appraiser and Developer, who valued subject property using both comparables and the residual subdivision method. He considered as comparables the Gully, Cangelo-si, Tircuit and Shaffer transactions. Mr. Lejeune considered the Gully transaction most nearly comparable, although he con *471 sidered the Gully tract inferior because of its proximity to houses of lesser value. Based primarily on Gully and allowing for adjustments in favor of subject property, Lejeune appraised subject tract at $9,525.-00 an acre.
Based on the subdivision approach and using a subdivision map of subject tract prepared by Edward E. Evans, Civil Engineer, Lejeune found that the subdivided tract would bring $90.00 per front foot, or $208,260.00 for the 2,314 lineal lot front footage shown on Evans’ map. Lejeune figured total construction cost at $39,347.-00, and figured a 25% profit on gross selling price or $57,580.00, which he added to construction cost, leaving a balance of $111,000.00 for land or $9,525.00 per acre. Admittedly, Lejeune relied primarily upon the residual subdivision method of appraisal.
In Lejeune’s opinion, the possibility of a zoning change affecting the price paid in the Gully sale was highly speculative. He also testified to personal knowledge of the failure of one attempt to rezone property on Sharp Road.
Oren W. Russell, appraiser, appearing for Appellee, testified in essence that he relied primarily upon the subdivision residual method of evaluation in arriving at his evaluation of subject property at $10,586.00 ail acre. He also considered the market data approach in which he relied to limited extent on the Gully Sale. He stated that in this respect he depended mostly upon a number of bulk sales of property in the area. Russell stated that the comparable approach substantiated his residual subdivision value appraisal which came to the same $10,586.00 figure per acre after considering gross sales of the subdivided subject tract, and subtracting therefrom the cost of development and allowance for profit to the developer.
Mr. Jack J. Harelson, Developer, testified to his interest and those of his associates and a family member in Sherbrook, Inc. and Milburn, Inc. Mr. Harelson also testified to this total ownership in two tracts situated at the corner of Flannery Road and Goodwood Boulevard as to which requests for zoning changes had so far been denied. Harelson also noted denial of a rezoning request as to a parcel in which he owned an undivided interest and which property was adjacent to that sold by Shaffer to the Sherwood Baptist Church. This property is located on Flan-nery Road. Harrison also referred to denial of a zoning request of another tract in which he owns an undivided interest, which tract fronts on Goodwood Boulevard.
We find no merit in Appellant’s contention the trial court should have permitted introduction of the municipal ordinance adopted subsequent to trial below. Neither do we find it necessary to remand this matter so that said ordinance may be filed in evidence. As pointed out by Appellant, LSA-R.S. 13:3712 requires that judicial cognizance be taken of municipal ordinances by a court where certified copies thereof have been filed with its clerk. We also note Brown v. Parish of East Baton Rouge, La.App., 126 So.2d-173, wherein we held that judicial notice must be taken of a city ordinance, a certified copy of which has been filed with the Clerk of the City Court, notwithstanding only uncertified copies thereof appeared of record. The ordinance in question was adopted January 26, 1972. The trial court rendered its judgment herein in June, 1971. Under the circumstances, neither the statute nor the Brown case are applicable herein as there was no ordinance in existence when this matter was determined below. We are of the view that the statute applies, and can only apply to such ordinances as existed when a matter was initially tried and could have been introduced in evidence. To permit introduction of or compel judicial cognizance of an ordinance adopted subsequent to decision by a trial court would lead to interminable litigation, and the unlimited reopening of matters fully tried because of subsequently occurring govern *472 mental action, the consideration of which could raise grave constitutional issues not present when a cause was initially filed, tried and decided. This result we cannot sanction as it would lead to that multiplicity of actions which the law abhors.
We likewise find no merit in Appellant’s contention, upon authority of Wilson v. Wilson, 205 La. 196, 17 So.2d 249, that the rules allowing introduction of newly discovered evidence are relaxed where facts occurring subsequent to an appeal are not denied. Wilson is readily distinguishable on its facts inasmuch as it involved a custody action wherein an aunt, having been granted custody of a minor, notified the appellate court by letter that she had surrendered custody to the mother who had appealed the custody decree. In Wilson, the successful litigant waived all rights under the decree in her favor, thus abandoning the litigation. Such is not the case in the present instance.
We are aware that where there is a reasonable probability of a zoning change which will affect the market price of expropriated property, such probability may be considered in determining value. City of Monroe v. Nastasi, La.App., 175 So.2d 681; City of Monroe v. Carso, La.App., 179 So.2d 696. However, in both Nastasi and Carso, it was expressly found that the reasonable probability of a zoning change was shown.
In this instance, we find no error in the trial court’s conclusion that plaintiff failed to establish the reasonable possibility of a zoning change in the property bought by Gully. Mr. Brown was the sole witness who testified as to the reasonable probability of the Gully tract being rezoned. Assuming, for argument’s sake, we could consider the zoning ordinance adopted more than six months following the decision below, the mere occurrence of such rezoning does not necessarily confirm that a reasonable probability of such rezoning existed at the time of Gully’s purchase. The reasonableness of such possibility was denied by Farrier and Lejeune, both of whom considered the possibility of rezoning to be highly speculative. This testimony is corroborated by that of Harelson, a disinterested developer, who testified to two instances in which rezoning was denied his personally owned property fronting on Flannery Road, a street of equal dignity with Old Hammond Highway in that it forms one of the streets bounding subject area. In addition, Harelson testified to the denial of rezoning of a tract fronting on Flannery Road and in which he owned an undivided interest. Moreover, the record establishes that the Gully property was rezoned to a classification which did not exist at the time of Gully’s purchase. We do not believe it reasonable to anticipate the creation of an entirely new zoning classification.
As regards Appellee’s contentions, we find no merit in the claim that the trial court erred in not resorting to the residual subdivision method of appraisal because of an absence of comparables to determine value on the market value method.
In the absence of comparable sales, secondary evidence predicated upon an appraiser’s general knowledge of land in the vicinity, or his utilization of a theoretical capitalization of income approach may be employed to fix compensation for property expropriated for public purposes. City of Houma v. Bolden, La.App., 149 So.2d 7.
Where, in an expropriation proceeding, the value of property taken cannot be established on the market value concept basis, because of an absence of comparable sales, cost of subdivision development may be utilized where the best and highest use of the property is for subdivision development. State of Louisiana, Through Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280.
 In the case at hand, we find that the trial court correctly fixed value on the market data concept basis rather than using the speculative residual subdivision val *473 ue approach urged by Appellant. Mr. Brown found the Milburn sales most comparable to subject property, and also relied on the Gully transaction, although admittedly there were some differences between the Gully tract and subject property. The thrust of Appellant’s argument appears to be that no comparables should be considered unless they are precisely similar to the property taken. The possibility of such an occurrence is indeed remote. It suffices that a comparable be similar to the property taken to such extent that a comparison of values may reasonably be made making allowance for differences in size, shape, location and other factors normally affecting value.
We likewise note that Appellee’s experts, Farrier and Lejeune, found certain compa-rables which they found sufficiently similar to use in fixing value on the market data approach after making adjustments they deemed in order. Admittedly, Le-jeune relied mainly on the subdivision residual approach, but Appellee’s own appraiser, Farrier, based his appraisal mainly on the market data concept of valuation.
Appellee incidentally contends the trial court erred in refusing to admit in evidence a letter from the East Baton Rouge Parish School Board, dated February 4, 1971, to W. Benton Harelson, offering to purchase a tract of land situated in the eastern portion of the area in question at a price of $11,236.00 per acre. Appellee acknowledges the general rule that offers to purchase are not to be considered in fixing the value of property expropriated for public purposes. However, Appellee argues, the rule should not apply to offers by a public authority made to an owner whose property is sought to be expropriated. Ap-pellee urges that since the School Board in this instance filed suit to expropriate Har-elson’s property upon his refusal of its offer, the offer to purchase and the petition subsequently filed by the School Board to expropriate the property should be considered in fixing the value of Appellee’s property. It is Appellee’s position that since the offer was by a public body, and was followed by an expropriation action, the genuineness of the offer cannot be disputed.
Granted such an offer to purchase may be less circumspect due to the greater probability of its freedom from fabrication and fraud, we are nevertheless of the view that evidence of this nature should not be considered in determining value of property taken in an expropriation proceeding. We so find because such offers may be prompted by special considerations peculiarly important to the offerer seeking to acquire property for a public purpose.
We conclude that the trial court properly fixed the value of Appellee’s property at the market value thereof as shown by sales of similar properties. In so doing, the trial court correctly gave effect to all those appraisers who valued the property on the market data basis. Market value of expropriated property must be determined on the basis of sales of similar or comparable properties where such evidence exists. Where no such comparables are to be found, market value may be determined by other means such as the testimony of experts, if it appears well reasoned. State of Louisiana, Through Department of Highways v. Hub Realty Company, Inc., 239 La. 154, 118 So.2d 364.
The judgment of the trial court is affirmed. All costs for which Appellant Commission is legally liable are assessed against the Commission.
Affirmed.