72 So.2d 869 (1954)
225 La. 341
STATE, Through the Department of Highways,
v.
BARINEAU.
No. 41409.
Supreme Court of Louisiana.
April 26, 1954.
Booth, Lockard & Jack, Shreveport, for defendant-appellant.
W. Crosby Pegues, Jr., D. Ross Banister, Philip K. Jones, Baton Rouge, Francis X. Vinet, New Orleans, Louis S. Quinn, Baton Rouge, for plaintiff-appellee.
FOURNET, Chief Justice.
The defendant, John N. Barineau, Jr., is appealing from a judgment of the District Court awarding to him the sum of $1,835.66 as the value (including the replacement cost of a fence) of a triangular strip of land across the rear of his property in Shreveport, the result of an expropriation suit by the State of Louisiana, through the Department of Highways, in connection with a program for the improvement and expansion of a thoroughfare in that city and the construction of a new viaduct over railroad yards near the property, thus facilitating the flow of traffic from the central business district to the southeast section of town and State Route 20. The defendant complains (1) that the quantum should have been fixed at $2,000 for the land taken plus $2,000 as severance damage to the remainder, according to the alternative prayer of his answer and reconventional demand; and (2) that he, the defendant *870 should have been awarded expert witness fees and costs. His main contention, that he should have been permitted to introduce testimony in support of his denial of necessity for the takingexcluded by the trial judge because of failure to file his answer timelywas abandoned in oral argument before this Court.
The land expropriated, used with adjoining land to provide a truck access road to the thoroughfare at street grade, is a diagonal strip forming, roughly, the southwest corner of defendant's land, as indicated by the shaded area in tract A on the plat reproduced below, and embracing 1,656 square feet. As disclosed by the sketch, the defendant's property is an inside lot on Spring Street, having a frontage of 100 feet by a depth of 117.61 feet, and measuring 11,761 square feet. The record discloses that it is located in a neighborhood which has declined as a residential area and is now suitable for industrial or commercial use; the property is used by the defendant in connection with his business of general contractor for the construction of buildings. His office, located in a small building at the front (or east end) of the lot, and two storerooms along the north side, are the only improvements; the remainder is vacant, used for parking of vehicles, for turning trucks within the area after loading or unloading at the warehouses (there being only the one extrance-exit on Spring Street), and for outside storage of material. The only other places of business in the vicinity are a corner store on the lot adjoining defendant's property and a restaurant across the street.

*871 Not included in the land sought in this expropriation suit is the extreme tip of the southwest corner, measuring 10 by 12 feet and containing 60 square feet, which is concededly of no value to the defendant, being entirely cut off from the remainder of his property. The portion expropriated plus the triangular tip total 1,716 square feet.
The experts who testified in this case real estate brokers of Shreveport, with many years' experience in the appraisal of property in that communityall agreed that the usual test of a willing purchaser and willing seller was not appropriate here, since the land would have no value except to an adjoining owner. Three members of the Shreveport Board of Realtors, appointed as an appraisal committee upon request of the Department of Highways to determine the market value of the area of defendant's land needed for the project, testified that they had arrived at their valuation of 27¢ per square foot on the basis of the consideration paid by the defendant for the land without improvements (there being none on the strip in question) some two and a half years before, i. e., $6,300; and finding that the entire tract contained 11,761 square feet, they arrived at an overall value per square foot of 54¢, which was reduced by 50% since the strip was to be taken off the less valuable rear of the lot. Employing another method of calculation based on depth-factor tables, they found that the strip equals 14% of the depth of the lot and also equals 14% of the total area, in which case the result produced was very close in total dollar value to the computation on a square foot basis. They further expressed the view that the new road across the rear of the property would make it more accessible, would provide a through route from one street to another, and would increase rather than diminish the value of the remaining land as commercial property.
On the other hand, for the defendant there was only one appraiser, who testified that in his opinion, due to the size of the lot, the rear had a value equal to the front value; he estimated the whole to be worth $14,000, or $1.50 per square foot. Moreover, in his view, the improvements (which he assessed at $14,000) would suffer a damage of 20% of their value, and the land would likewise be damaged due to the fact that a less number of cars could be parked and less material stored thereon.
The trial judge, in a well considered opinion, expressed himself as being at variance in some particulars with the relators who testified in the case, those for the State as well as the one for the defendant. Taking an average of the State's value of $6,300 and the defendant's value of $14,000, this being $10,150, or approximately 90¢ per square foot, he showed this figure was more nearly comparable with the price of $1.15 per square foot paid by the State for the whole of the adjoining property (indicated on the plat as tract B), having a much higher actual value due to its size and location. With respect to the claim for damage to the remaining land, the trial judge observed that no testimony was offered to show what the property could be sold for after expropriation, but that he, upon making a personal inspection of the premises, found that the defendant would still have ample space to the rear of the office building to accommodate the small quantity of material stored outside of the covered storerooms, and since there was no longer necessity for turning of trucks, the severance of the portion taken would not result in any appreciable damage to the remainder, "especially since we have allowed the increased value for the property taken." The defendant was awarded $1,544.40 for the land expropriated plus the triangular southwest tip, and $291.26, the agreed cost of replacing a fence across the rear.
From our appreciation of the evidence, the award is a reasonable one. It is unnecessary to review the various arguments of counsel for the defendant wherein he seeks to show that the appraisal made by the State's relators did not reflect the true value of the property taken, since the trial court's award was in excess of three times the square foot valuation placed on the strip by the appraisal committee. Nor *872 is there merit in his contention that the State's offer to pay $10,000 for a lot across Spring Street from defendant's property (partially shown on the plat and indicated as tract C), measuring 40 feet by 150 feet, is the best evidence of the value of land in the vicinity, i. e., $1.67 per square foot, and should be adopted in this case. That offer was made for the whole of the property, containing some improvements (a residence), in an effort to compromise on a price rather than resort to litigation. Counsel's further contention that defendant's business as an assembled unit has been seriously damaged by severance of a portion of the property is not supported by the record.
The trial Court, in rendering judgment in this case, decreed that the "plaintiff pay all costs of this cause." However, counsel for the defendant, noting that the Court in its reasons for judgment expressed the opinion that "Under the law the plaintiff herein cannot be assessed with any cost other than the stenographer's fees," argues that the defendant should be allowed "all normal fees of the clerk, sheriff, etc.," plus $75 paid by him as a fee to his real estate appraiser, Mr. N. B. Stoer.
Although the lower court rendered the proper judgment, the statement contained in the Court's "Reasons" is incorrect, since the general rule that the State and its political subdivisions, public boards or commissions are exempt from payment of court costs except "stenographers' costs for taking testimony", LSA-R.S. 13:4521, does not apply in expropriation proceedings. In these, the State is liable for costs, unless tender of the true value of the land has been made before proceeding to a forced expropriation, in which case "the costs of such proceedings shall be paid by the owner", LSA-Civil Code, Art. 2638; LSA-R.S. 19:12; Louisiana Hwy. Comm. v. Bullis, 197 La. 14, 200 So. 805; American T. & Tel. Co. v. Maguire, 219 La. 740, 54 So.2d 4. To hold that the owner must pay his own costs in resisting attempts to take his land without his consent would nullify to a certain extent the constitutional guarantee of just and adequate compensation, Art. 1, Sec. 2, La.Const. of 1921, which "clearly contemplates that the class of expenses usually taxed as costs should be included as an element of the owner's damage * * *." Westwego Canal & Term. Co. v. Louisiana Highway Comm., 200 La. 990, 9 So.2d 389, 392; see, also, Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612; Gulf Shipside Storage Corp. v. Thames, 217 La. 128, 46 So.2d 62.
The judgment of the District Court is not limited; it decrees that the State shall pay all costsmeaning, of course, legal costs in proceedings of this type. When and if the defendant takes a rule to have such fees fixed and taxed as costs, should he consider himself aggrieved by the judgment of the Court, then the matter can properly be reviewed on appeal.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are to be paid by appellant.
MOISE, J., absent.