TATE, Judge
(dissenting).
I respectfully dissent.
The majority’s thoughtful decision in the companion case, State, Through Dept. of Highways v. Patout, 236 So.2d 40, discusses the pertinent facts. The opinion shows that the defendant landowner may have indeed been careless in constructing five homes on property in the path of the proposed Interstate.
However, it is inconceivable to me that a landowner would construct over one hundred thousand dollars of buildings deliberately in order to have them expropriated by the State. In the absence of deliberate bad faith, the landowner is under our constitution entitled to recover the value of all improvements taken by the State. The majority errs, I believe, in reversing the trial court’s considered deter- *54 urination that no such foolish scheme existed.
In the first place, the evidence preponderantly shows that the value of these homes to be indeed in the area of $125,000, as awarded by the trial court. Why should the landowner build these homes in 1964 and have their money potentially tied up because of a lawsuit over the value of the improvements ? If the landowner wins his suit, he simply recovers his money back, with interest only at the rate of five percent per annum — and in today’s money market this is certainly an inadequate return.
The Department originally deposited $115,350 in November, 1964, apparently conceding that the value of the improvements is approximately as claimed. However, some five months later, by supplemental and amending petitions of April 14, 1965, the Department reduced its admitted liability to $18,074.[1] For the first time, it contended that the improvements had been built in bad faith. This belated claim that the landowners had knowledge of the final path of the Interstate at the time they built their valuable improvements is strongly corroborative of the landowner’s claim to the contrary. (The facts upon which the Department relies were not belatedly discovered. They were just reinterpreted at a subsquent time to provide a defense to the landowner’s claim to recover the market value of improvements taken.)
The thoughtful majority opinion indeed indicates that the landowner’s construction without complete investigation may not have been most prudent under the circumstances.
Nevertheless, the question is not whether the landowner exercised reasonable care, as this is not a tort case; but instead whether they were guilty of such bad faith as to permit the State to avoid the mandate of our constitution that the landowner receives the value of property taken by the State.
In this regard, it is to be noted that the defendants in 1961 expressly inquired of the Department of Highways concerning the State’s need for any further rights of way. See letter of August 5, 1961, quoted in majority opinion. On August 17, 1961, the state’s appraisers notified the landowners that “we do not contemplate the acquisition of any further rights of way in your subdivision for the proposed Lafayette intersection”. In the light of the landowner’s previous query, his reliance upon such assurance was not unreasonable, as the trial court held.
In summary, then, I believe a majority errs in denying the landowners the market value of their homes built on the property taken for the following reasons:
(1) I see no warrant in departing from the mandate of our constitution that “private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid”, Article I, Section 2, Louisiana Constitution of 1921.
(2) It is not conceivable that landowners would construct $125,000 of improvements, just to be able to sell them to the State via a hotly contested expropriation litigation. (Had the trial court so found, I might not have considered such finding manifestly erroneous, but it did not.)
(3) I do not believe the trial court’s finding that the improvements were built in good faith should be reversed in the absence of manifest error. Instead, such finding *55 is supported by such circumstances as the State’s 1961 assurance that no further rights of way would be needed, the State’s failure to notify the landowners that the improvements encroached on the contemplated right of way, the State’s belated defense of fraud raised some six months after the expropriation (although presumably it was in possession of all the facts at the time suit was filed), and the unlikelihood of such foolish human behavior as that ascribed to the defendants’ officers.
(4) The Interstate was tentatively planned in 1959. The expropriation did not take place until late 1964. In 1961 the State had indicated no further rights of way would be needed. I do not believe landowners are required to let their land lie dead and unimprovable for long intervals of years, just because the State has at one time indicated its tentative intention to place a highway in a given area.[2]
The writer fully respects the careful and conscientious analysis of the majority of a voluminous record. He does not deny that the circumstances indicate misjudgment on the part of the landowners and afford much basis for the majority’s opinion. Nevertheless, for the reasons stated, he does not believe that we should set aside the equally thoughtful and sound analysis of evidence by the trial court, who saw and heard the witnesses, nor its soundly based determination that the landowners were not in bad faith and did not deliberately construct $125,000 of improvements just to have the State expropriate them.
For these reasons, the writer respectfully dissents.

. By its amended petition, the Department’s tender was constructively reduced to only $18,074. The majority’s opinion reduces the award to the landowner to $29,280. An expropriating authority is required to pay all costs unless it tenders to the landowner the true value of the property taken. Civil Code Article 1938; LSA-R.S. 19 :12; State through Department of Highways v. Barineau, 226 La. 341, 72 So.2d 869. It appears to me, therefore, that (even if the majority were correct in reducing the award) the majority errs in disallowing the landowner’s costs, including its expert’s fees for testifying.

. Just in today’s newspaper, there are news items concerning the purchase of land by a state government for an Interstate interchange, which became worthless when the route of the highway was changed some months or years later.