UNITED STATES of America,
Plaintiff-Appellee,

v.

1,955.00 ACRES OF LAND IN GEARY
AND RILEY COUNTIES, KANSAS
(TRACT NO. 548) et al., Defendants-
Appellants.

No. 182–70.

United States Court of Appeals,
Tenth Circuit.

Aug. 31, 1971.

Dirk D. Snel, Atty., Department of Justice, Washington, D. C. (Shiro Kashiwa, Asst. Atty. Gen., Robert J. Roth, U. S. Atty., Roger K. Weatherby, Asst., U. S. Atty., Topeka, Kan., and Edmund B. Clark, Atty., Department of Justice, on the brief), for plaintiff-appellee.

William A. Collet, Kansas City, Mo., for defendants-appellants.

Before LEWIS, Chief Judge, and JOHNSEN,* and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

The Government condemned 400 acres of land in fee in Geary and Riley Counties, Kansas, for an expansion of Fort Riley. A Commission was appointed by the District Court under Rule 71A(h), F.R.Civ.P., and it made an award of $88,110 for the taking. The report was adopted by the Court and objections of the landowners on several grounds were overruled and judgment was entered based on the report. The landowners' sole contention on appeal is that the Commission erred in refusing to make any allowance for considering 101 acres of the condemned tract for limestone quarrying purposes.

Generally the facts are these. It was agreed that the tract consisted of 214 acres of pasture and three acres of homesite. Improvements on the land consisted of a dwelling and seven other buildings or improvements whose number and size were agreed on. The parties were unable to agree on the highest and best use of the land at the date of taking in December, 1965. The Government maintained the highest and best use for the entire tract was as an improved grain and livestock farm. The landowners contended that the highest and best use was grain and livestock ex-

---

* Of the Eighth Circuit, sitting by designation.

cept for approximately 101 acres whose highest and best use was for limestone rock production.

The Commission viewed the property and heard testimony which will be detailed below. The Commission Report summarized the evidence, including that of the landowners' witness Walker who said there were 101.4 acres underlain by hard commercial limestone. The presence of the limestone was not disputed, but the witnesses disagreed on its marketability.

Taking into account the limestone factor, the landowners' witnesses testified respectively that the property was worth $155,300 and $165,000. The Government witnesses gave no consideration to a value based on the limestone and testified the property was worth $69,500 and $71,000. The award, as stated, was $88,000. In connection with the limestone issue the Report made the following finding:

"There was considerable evidence as to the amount of rock that was under some of this land but since there had been no rock produced on said land and since the land had never been quarried at any place to determine whether there was a definite amount of rock, the commission finds that this cannot be considered in the amount of the award."

The landowners' objections argued that the rejection of the consideration of the limestone was error as a matter of law and clearly erroneous. The District Court reviewed the record and overruled all the objections and adopted the report. In discussing the limestone issue the District Court's Memorandum stated:

"The trouble is that here the Commission determined that the presence of the rock, under all the circumstances, did not add to the market value of the property.

\* \* \* \* \* \*

"The Commission was obviously not persuaded that the stone in place had a potential market value in the area at the time of taking and its conclusion was that the value of the tract was not enhanced by the presence of the stone.

\* \* \* \* \* \*

"Though the Commission may have given a wrong or insufficient reason for not allowing any additional value for the rock in place, the fact remains that the Commission was obviously not persuaded by a preponderance of the evidence that a market existed for the commercial quarrying of the rock. \* \* \*"

The findings of the Commission are to be accepted by the Court unless clearly erroneous, Rule 53(e) (2) F.R.Civ.P.; United States v. Waymire, 202 F.2d 550 (10th Cir.), and those of the Court are binding on us likewise unless clearly erroneous. Rule 52(a) F.R.Civ.P. We, therefore, must consider whether the record affords substantial support to the findings or whether they are clearly erroneous under established standards. We turn, therefore, to a more detailed discussion of the findings and proof.

The presence of the limestone on the tract of approximately 101 acres was not disputed. The proof of the limestone and its marketability came primarily from Mr. Walker, a civil engineer who had been in the limestone and quarrying business since 1960. His testimony was that he took 33 core samples on the tract which established the presence of hard commercial limestone, and his supporting exhibits were admitted. There was no proof contradicting the testimony, the physical tests or the exhibits demonstrating his findings.

Mr. Walker owned and operated several crushing plants, including one within five miles of this tract. He took a lease on the landowners' tract in 1961 for the purpose of mining limestone, agreeing to pay a royalty of five cents per ton for the landowners' mineral which he estimated to total 2,376,960 tons. He had not commenced mining operations under the lease at the time of the hearing and was intending to move his crushers to the vicinity, when the taking intervened.

Mr. Walker and other witnesses for the landowners testified at length as to the market for limestone in the area.

The proof showed that the limestone met both Federal and State specifications for most construction purposes. This quality of hard limestone was shown to be most difficult to locate in this area of Kansas. Due to the presence of Fort Riley and highway, street, bridge and private construction there was a substantial market before and after the taking. The market was sufficient to convince Walker that he should invest most of his capital to move his crushers to the vicinity of the landowners' tract. He would have been able to mine all the limestone there within approximately ten years.

The Government witnesses did not controvert the presence or extent of the limestone, or the general market existing. They did point to the presence of three other quarries in the vicinity. It was shown, however, that two of the quarries had closed down. The viewpoint of the Government witnesses was that present quarries met the general needs of the area. However, their testimony took no account of the future value of the limestone; of the fact that the landowners' mineral met the high standards for Federal and State construction, which other sources in the vicinity did not do.

On this record we cannot agree with the Government that the limestone value could be ignored by the award. Its presence was undisputed, as was a general market, and the future market demands. The Commission was not obliged to accept the value figures as an inexorable indication of what the award should contemplate as the value of the limestone. However, we are persuaded that the Commission's finding, which the Court accepted, was premised wrongly on the fact that there had been no quarrying at present, and on the erroneous view that this fact destroyed the landowners' case for consideration of the mineral value. In United States v. Silver Queen Mining Company, 285 F.2d 506, 510 (10th Cir.), this Court stated:

"Although cash market value may not be proved with certainty the test of just compensation remains the same and the required proof need rise no higher than the circumstances permit. Some speculation is inherent in the ascertainment of value of all resource property, be it mineral, oil, gas or otherwise, and if the quality of proof of value follows the custom of the industry, is the best available, and is sufficient to allow the jury or court to make an informed estimate as to the fact of value, such proof is sufficient to meet the burden."

And quoting the opinion in Montana Railway Co. v. Warren, 137 U.S. 348, 352, 11 S.Ct. 96, 97, 34 L.Ed. 681, the Court further stated:

"That this mining claim, which may be called 'only a prospect,' had a value fairly denominated a market value, may, as the Supreme Court of Montana well says, be affirmed from the fact that such prospects are the constant subject of barter and sale. Until there has been full exploiting of the vein, its value is not certain, and there is an element of speculation, it must be conceded, in any estimate thereof. And yet, uncertain and speculative as it is, such 'prospect' has a market value; and the absence of certainty is not a matter of which the railroad company can take advantage when it seeks to enforce a sale."

See also United States v. Sowards, 339 F.2d 401 (10th Cir.); National Brick Co. v. United States, 76 U.S.App.D.C. 329, 131 F.2d 30; and United States v. 287.89 Acres of Land, 241 F.Supp. 456(W.D.Pa.).

The basic elements calling for some consideration to be given to the limestone were undisputed. The general market and future market value were substantially proven, also without dispute. We feel the Commission finding underlying the judgment was premised on an error of law by focusing on the absence of present quarrying on the tract. We therefore feel that there was a clearly erroneous finding and legally incorrect conclusion made in dismissing entirely consideration of the limestone

value. In short, while the proof in no way compelled any particular valuation on the limestone, we feel it clear that the proof was such that it could not be entirely rejected in reaching a fair award of just compensation. Therefore, we are persuaded that the award of damages must be reconsidered by a further proceeding by the District Court or the Commission, as that Court feels most appropriate. See United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L. Ed.2d 629. On such further hearing the condemnation damages should be reconsidered, taking into account the proof on the present and future marketability of limestone shown to be on the taken property, as a proper factor to consider in the award.[1]

Accordingly, the judgment is vacated and the case remanded for further proceedings as the District Court may determine to reconsider the award for the purposes stated herein.

---

[1]. We may not, of course, remand for there to simply be added a value based on the limestone, for this would appear to follow an impermissible summation approach. See United States v. 158.76 Acres of Land in Windham County Vermont, 298 F.2d 559 (2d Cir.). The remand, as indicated, is for reconsideration of the condemnation damages generally, taking into account the limestone value, which we feel the landowners are entitled to have considered.