**UNITED STATES of America**

v.

**71.29 ACRES OF LAND, MORE OR LESS, Situate IN CATAHOULA ET AL. PARISHES, and Lee Walker, Jr., et al.**

**UNITED STATES of America**

v.

**145.30 ACRES OF LAND, MORE OR LESS, Situate IN OUACHITA PARISH, STATE OF LOUISIANA, et al.**

**Civ. A. Nos. 15813, 15895.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

May 21, 1974.

William L. McLeod, Jr., McLeod & Rozas, Lake Charles, La., George M. Snellings, Jr., Kent Breard, Snellings, Breard, Sartor, Shafto & Inabnett, B. Roy Liuzza, Hudson, Potts & Bernstein, Monroe, La., Charles Stuhr, Stuhr & Martin, San Francisco, Cal., for defendants in No. 15813.

George M. Snellings, Jr., Kent Breard, Snellings, Breard, Sartor, Shafto & Inabnett, William D. Brown, Brown & Wicker, B. Roy Liuzza, Hudson, Potts & Bernstein, Monroe, La., James H. Rounsaville, Jacksonville, Tex., Thomas M. Hayes, Jr., Hayes, Harkey, Smith & Cascio, Monroe, La., Murphy Blackwell Jr., Jones, Blackwell, Chambliss, Hobbs & Henry, West Monroe, La., James D. Sparks, Jr., Monroe, La., for defendants in No. 15895.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DAWKINS, Senior District Judge.

These actions were consolidated for trial to the Court without jury, but with separate judgments to be entered, April 22, 1974. They were tried on the issue of just compensation to be awarded to the owners of the tracts hereafter identified, reserving trial at a later date as to other tracts condemned in these proceedings.

These condemnations were made at the instance of the Department of the Army, Corps of Engineers, pursuant to a Federal navigation and navigable waters beautification and recreational project. Date of Condemnation, as per judgment of possession of record in each action, was June 29, 1970, in No. 15,813, and July 28, 1970, in No. 15,895.

Donald E. Walter, U. S. Atty., Levin H. Harris, David R. Lestage, Asst. U. S. Attys., for the Government.

### Findings of Fact

1. The following identified tracts, with the amounts of acreage and owner-

ship set forth, were taken by the United States in their entirety, there being no issue as to severance damage, and none concerning the value of improvements:

| Tract No. | Owners | Acreage |
|---|---|---|
| 803 | Elizabeth H. Magee and Margaret H. Norwood | 4.16 |
| 804 | Carol Flower Layton, Robert Layton, Jr., and Carol Layton Parsons | 4.56 |
| 805 | Charles F. Stubbs, Carolyn Stubbs Lynch, and Barry Stubbs | 4.85 |
| 806 | Kent Breard and George M. Snellings, Jr. | 5.92 |
| 807 | Charlotte S. James and Satchie S. Naiden | 6.00 |
| 813 | Dorothy K. Sholars, Charlotte S. James, and Satchie S. Naiden | 6.00 |
| 814 | George M. Snellings, Jr., and Breard Snellings | 5.79 |
| 815 | George M. Snellings, Jr.; Breard Snellings; Markee M. Simonson; Breard Hawks; Satchie S. Naiden; Charlotte S. James; and Ouachita National Bank | 4.92 |
| 817 | Karl Jimmie Jones; Allen Jones; Francis S. Barringer, Jr.; and Pauline Barringer Primos | 4.38 |
| 818 | Doll Hudson Biedenharn | 9.21 |
| 819 and 819A | Lela Starts Breard; Dan Armand Breard; Laura Breard Rinehart; Herbert L. Breard, Jr.; Lady Bird Dixon Breard; William B. Winston; L. A. Breard, Jr.; Sylvester Breard; Lawrence Breard; Mildred Breard Rounsaville; and Herbert S. Breard | 5.17 |
| 821 | Elizabeth H. Magee and Margaret H. Norwood | 8.97 |

2. The Government's only witness as to value was Guy L. Tucker, Jr. He appraised the market value of the several tracts at various valuations ranging from $550 to $750 per acre. He attached no particular significance to their frontage on the Ouachita River, a beautiful navigable stream flowing past the properties taken, in the City of Monroe, Louisiana.

Using a market data-comparable approach, Tucker based his appraisal upon five sales made in January, 1966, lying

west of the Ouachita River levee, by Nelson Realty Company to five buyers whose residences abutted these tracts east of the levee. Prices in those particular sales ranged from $475 to $700 per acre.

3. We find the Nelson Realty sales to be unacceptable comparables, because: (a) they were unique, special purpose sales (made to adjacent residence owners), and not exposed to the public; (b) only one of the five Nelson tracts has any river frontage, that being a narrow, normally impassable inlet; (c) the Nelson tracts are unimproved cut-over woodland, while the tracts at issue here are cleared land; (d) subject tracts are in the City limits of Monroe, with immediate access to a public road, electric power, and the city water supply; the Nelson tracts have no access to a public road, are outside the city limits, and have no water or electric power facilities available; (e) subject tracts have immediate access to public boat dock facilities, as well as to the swimming pool, golf course, tennis courts, and playground facilities of Forsythe Park, a fine municipally owned and operated property. None of these are available to the Nelson tracts.

4. We further find the appraisals by Tucker should be accorded little weight because he has been a regular, full-time employee of the condemning authority, the Corps of Engineers, for ten years. He is a resident of Vicksburg, Mississippi, with little familiarity with the subject properties, or the Monroe real estate market; and he never has engaged in the real estate business, buying and selling for others. We, therefore, must reject his valuations and appraisals entirely.

5. Defendant property owners presented the testimony of W. Gilbert Faulk and E. A. Porter, Jr., experienced realtors and appraisers, who have practiced their profession in Monroe for many years, buying and selling properties for the public. They almost daily have made independent appraisals through professional engagements. Both have been accepted as qualified expert appraisers in

the State and Federal Courts of Louisiana in many cases. Both have had intimate knowledge of the Monroe real estate market, and of the subject properties, for many years. We accept their appraisals as sound, well-reasoned, and as a proper basis for awards of just compensation in these actions.

6. Faulk and Porter, each making his appraisal study independently, concluded that the highest and best use of the subject properties was for recreational purposes, the same use for which the Government condemned the properties. Both recognized the significant value in their river frontage for boating, fishing, swimming, picnicking, horseback riding, and other leisure activities. The clear advantages of location of the properties within City limits, with available public water and electric power supply, and immediate access to a public paved street, public boat dock, and public park, golf course, tennis courts, and swimming pool, properly were taken into account by them.

7. These appraisers also noted the commercial value of the subject tracts for the sale of sand and fill dirt, largely self-restoring with each rise and fall of the river.

8. Using the market data approach, these appraisers chiefly compared two groups of sales, upriver from the condemned property, and both within the appropriate time frame. One group, of some thirty-two sales, was developed by George Fluitt on a sandbar located on the west bank of the Ouachita River, about eleven miles north of Monroe. These lots were sold only as "river" recreational lots, having access only by water, and with no utility services or developer's investment other than raw land and survey costs. Half of the lots are subject to annual overflow. They were sold to the public at prices on a $5,000 per acre basis.

The other development, by Kent Anderson, on Bayou D'Arbonne and the Ouachita River, consisted similarly of subdivision of waterfront acreage for recrea-

tional lot sites, having no facilities, and no improvement costs. Access to these lots is by water and rural road. These, too, are sixty-four lot sales at prices on a $6,000 per acre basis.

9. Using those comparables, with appropriate adjustments, Faulk and Porter quite conservatively appraised the subject properties as having a fair market value, as of the dates of taking, of $3,500 per acre (Faulk) and $3,000 per acre (Porter). Neither Faulk nor Porter found any variances in the subject tracts of sufficient significance to warrant any differential in appraised values among them.

10. Robert E. Bentz, testifying for the property owners, appraised the subject properties as having a fair market value of $4,000 per acre, related solely to direct, actual marketability of fill dirt and commercial quality sand deposits from all of the subject tracts. These sand deposits, as mined, largely are restored by new deposits left with each rise and fall of the river.

As President of Bentz & Elmore, Inc., he was well qualified to give such testimony since he and his firm have been engaged for many years in the business of road construction and asphalt surfacing, requiring fill dirt and quality sand. In fact, his firm had purchased and mined fill dirt and sand from the subject tracts for several years prior to the taking, and was so engaged at the time of the Government's condemnation.

11. We find the appraisal testimony of defendants' experts to be acceptable, well reasoned, and based upon fair and valid comparables and considerations.

■ 12. We further find that the owners of the several tracts have paid Faulk and Porter appraisal fees for their work and study, and development of their market value conclusions, at the rate of $75 per acre, billed to each owner at that rate multiplied by the acreage of each of the subject tracts. Defendants also have paid witness fees, billed since the trial by Faulk and Porter, for their expert testimony, at the rate of

$100 per tract as to each of these witnesses. Counsel for the Government has agreed that these fees have been paid, waiving the necessity of any proceeding by rule, but reserving the Government's right to oppose recoverability or recoupment of such fees and costs as a matter of law. We find these to be reasonable in amount, if legally recoverable, in relation to the time, study, research, and scope of the appraisal undertakings involved.

## Conclusions of Law

■ 1. Defendant property owners constitutionally are entitled to just compensation for the property taken.

*United States Constitution, Amendment V:*

". . . nor shall private property be taken for public use, without just compensation."

2. Just compensation means

". . . the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken." United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943).

"The just compensation to which an owner is entitled is the fair market value of the property that has been taken." 3,535 Acres of Land, etc. v. United States, 146 F.2d 872 (5th Cir., 1945). See also United States v. 100 Acres of Land, etc., 468 F.2d 1261 (9th Cir., 1972).

■ 3. The value, uses, and benefits of property under condemnation fronting upon a navigable stream are vital elements, recognized as such by Congress, in determining just compensation for its taking.

33 U.S.C. § 595(a):

"In all cases where real property shall be taken by the United States for the public use in connection with any improvement of rivers, harbors, canals, or waterways of the United States, and

in all condemnation proceedings by the United States to acquire lands or easements for such improvements, the compensation to be paid for real property taken by the United States above the normal high water mark of navigable waters of the United States shall be the fair market value of such real property *based upon all uses to which such real property may reasonably be put,* including its highest and best use, any of which uses may be dependent upon access to or utilization of such navigable waters. . . ." (Emphasis added.) See, also, United States v. 967,905 Acres of Land, etc., 447 F.2d 764 (8th Cir., 1971), writs denied, 405 U.S. 974, 92 S.Ct. 1193, 31 L.Ed.2d 248.

■ 4. The best evidence of fair market value is found in comparable sales in the area within a reasonable time preceding the condemnation. United States v. Featherston, 325 F.2d 539 (10th Cir., 1963) ; United States v. 147.47 Acres of Land, etc., 352 F.Supp. 1055 (M. D.Pa., 1972).

■ 5. Sand deposits in the property are vital elements of fair market value and should be taken into account in determining just compensation. United States v. 1,955 Acres of Land, etc. 447 F.2d 673 (10th Cir., 1971) ; Lafayette Airport Commission v. Roy, 265 So.2d 459 (3rd Cir., La.App., 1972), writs refused.

■ 6. The competence and qualifications of an expert witness are matters for decision by the trial Judge, in the exercise of his judicial discretion, and his decision is final unless clearly erroneous as a matter of law. St. Joe Paper Co. v. United States, 155 F.2d 93 (5th Cir., 1946) ; United States v. 100 Acres of Land, etc., 468 F.2d 1261 (9th Cir., 1972) ; United States v. 60.14 Acres of Land, etc., 362 F.2d 660 (3rd Cir., 1966) :

"It is true that a real estate expert, unlike the usual expert, is not called on to express an opinion on hypothetical facts which he is asked to assume to be true without having any personal information on the subject. The practical reason for this is that there are no universal values of real estate, which is peculiarly bound by its situs. *A real estate appraiser, no matter how well qualified he may be in general, therefore, is not an expert on the value of property which is unknown to him or is situated in an area which is unfamiliar to him.* United States v. 13,255.53 Acres of Land, 158 F.2d 874 (3 Cir. 1946). *Instead the essential elements of the real estate expert's competency include his knowledge of the property and of the real estate market in which it is situated, as well as his evaluating skill and experience as an appraiser.*" (Emphasis added.)

■ 7. Interest at a reasonable rate is an element of just compensation, the amount to be determined by the trial court.

"In a complex capitalist society such as ours, a determination as to what is a proper rate of interest has many variables based on economic and business considerations which may vary within each factual situation." United States v. 100 Acres of Land, etc., 468 F.2d 1261 (9th Cir., 1972).

■ And interest should be computed upon the judgment from the date of the order of possession. United States v. 85.11 Acres of Land, etc., 243 F.Supp. 423 (N.D.Okla., 1965) ; Fibreboard Paper Products Corp., v. United States, 355 F.2d 752 (9th Cir., 1966).

■ Interest at the rate of 7% per annum from the date of the order of possession is fair and reasonable, as is the statutory rate of legal interest in Louisiana, especially at times when the prime rate of interest in this country, within judicial cognizance, is in the nine to ten percent (9% to 10%) range, or higher. Louisiana Civil Code, Art. 2924, as amended in 1970 and 1972.

8. The Government's authority to condemn, and the public use for which

these properties were condemned, are not at issue. 33 U.S.C. § 591:

"The Secretary of the Army may cause proceedings to be instituted, in the name of the United States, in any court having jurisdiction of such proceedings, for the acquirement by condemnation of any land, right of way, or material needed to enable him to maintain, operate or prosecute works for the improvement of rivers and harbors for which provision has been made by law; such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted. . ."

9. The property owners here are entitled to be made entirely whole as to the value of their property which has been taken. Accordingly, they are entitled to recoupment of their costs, fees, and expenses paid to independent, professional appraisers engaged by them, especially under the applicable Louisiana law, as followed by the Fifth Circuit relative to taking of Louisiana property. Henning v. Lake Charles Harbor and Terminal District, 387 F.2d 264 (5th Cir., 1968):

"It is true that in State, through Dept. of Highways v. Jones, 243 La. 719, 146 So.2d 414, the Supreme Court of Louisiana categorically stated that recovery of appraisal fees, under Louisiana law, is regarded as costs rather than damages. It is likewise true that this Court has held that United States District Courts have no authority to tax costs for compensation to expert witnesses in excess of the statutory attendance per day, mileage and subsistence allowance, Kirby Lumber Corp. v. Louisiana, 293 F.2d 82, 83 (5th Cir. 1961); Green v. American Tobacco Co., 304 F.2d 70 (5th Cir. 1962). *Nevertheless, Louisiana law, R.S. 13:-3666 provides that 'the fees and expenses of experts summoned and used by the successful litigant may be taxed as costs.' This, it has been held by the Supreme Court of Louisiana, is necessary in order that the property owner may receive that just compensation required by the Constitution of Louisiana,* State through Dept. of Highways v. Barineau, 225 La. 341, 72 So.2d 869 (1954). *We accordingly hold that this reimbursement, by whatever name called or by whatever procedure handled in the state court system, is a substantive right of the landowners, and binding upon this Court.* Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)." (Emphasis added.)

To deprive the property owner of reimbursement for these fees and costs, to which he was subjected only because of the condemnation, would be to lessen *pro tanto* payment of the amounts of just compensation to which he constitutionally is entitled. United States Constitution, Amendment V.

United States v. Lee, 360 F.2d 449 (5th Cir., 1966):

" 'Just compensation' invokes the equitable powers of the court, and courts must use their equity powers to put an owner of land being condemned in as good position as he would have been if his property had not been taken, or as nearly so as is possible under the given circumstances. City of Fort Worth, Texas v. United States, 5 Cir. 1951, 188 F.2d 217.

"The $980.00 for the cost of the survey awarded by the court below to the landowners, was actually part of the just compensation contemplated under the Constitution so as to make the landowners whole."

We conclude, accordingly, that as a matter of equity, and constitutional "just compensation," the property owners here are entitled to reimbursement of their appraisal costs and fees, as evidenced and stipulated.

Predicated upon these findings of fact and conclusions of law, we hereby award to the defendant property owners, as just compensation for each of the respective tracts condemned, the sum of $3,000 per acre, with interest on the amount allocable to each tract, at the

1228

rate of 7% per annum, from the date of taking until paid, less and subject to credit for the amount deposited by the Government for each tract on the date of taking (interest to be computed on the difference); plus the amount expended by each owner for appraisal costs and witness fees, as evidenced or stipulated. Separate judgments in each of these cases will be. submitted for signature and entry.