*133
 
 McCALEB, Justice.
 

 These consolidated suits involve the single question as to the effective date of Act No. 291 of 1948, enacting further changes in the Louisiana Unemployment Compensation Law, Act No. 97 of 1936, as variously amended. The complaints of the plaintiffs are that the Administrator of the Division of Employment Security of the State Department of Labor has erroneously compelled them to pay contributions at higher percentages, for the calendar quarter October lst-December 31st, 1948, than those required by Act No. 291 of 1948 and that, therefore, he should be ordered to correct his records and make proper refunds.
 

 Specifically, Gulf Shipside Storage Corporation alleges that it is an “employer”, as that term is used in the Louisiana Unemployment Compensation Law; that, under Section 6 thereof, it was required to make quarterly contributions to the Unemployment Security Fund of the State of Louisiana; that the amount of the contribution is determined by a certain percentage, or contribution rate, 'which is fixed in the Act at 2.7% unless the employer can qualify for the benefit of a reduced rate of contribution in accordance with its “experience-rating record”; that one of the factors used in determining the experience-rating record is the “average annual payroll”; that, prior to the effective date of Act No. 291 of 1948, the law defined the term "average annual payroll” to'mean the average of annual payrolls of an employer for the last three preceding 12 consecutive calendar month periods ending March 31st of each calendar year or “for the 12-consecutive-calendar-month period ending on the computation date, whichever is the larger”; that, by virture of Act No. 291 of 1948, the definition of “average annual payroll” was changed to mean the average of the annual payrolls of an employer for the last three preceding 12 consecutive calendar month periods ending on the.computation date preceding the experience-rating year and that, by application of the latter definition, its rate of contribution for the calendar quarter October lst-December 31st 1948 was 1.2%. It is asserted that, despite the fact that Act No. 291 of 1948 became effective 20 days after the end of the regular session of the Legislature, or on July 28th, 1948, the defendant Administrator failed and refused to apply the definition of “average annual payroll” contained therein in computing the rate of its contribution for the. calendar, quarter, October lst-December 31st 1948, but, instead, wrongfully used the definition contained in the old law and has persisted that its rate of contribution should be 2.1%; that it was forced to pay the contribution at this unlawful rate, which it did under protest; that it is entitled to have a re-determination of the matter and that defendant be ordered to correct the records of his department to show the proper rate of contribution and refund the sum of $485.04, representing the overcharge.
 

 The allegations of the other plaintiff, New Orleans Stevedoring Company, Inc., are
 
 *135
 
 that, under the provisions of Act No. 291 of 1948, it was entitled to qualify for a reduced rate of contribution (less than
 
 2.7%)
 
 in accordance with its “experience rating record” by reason of the fact that its experience rating record could have been charged with benefits throughout the entire 36 consecutive calendar month period ending on the computation date; that, notwithstanding this, the defendant Administrator determined that it was not entitled to the reduced rate because its annual payrolls ending on the computation date did not equal or exceed 35% of its highest annual payroll in the 36 consecutive calendar month period; that, in so doing, the defendant applied the law as it existed prior to the 1948 amendment and unlawfully refused to determined its eligibility for a reduced rate of contribution for the period October lst-December 31st, 1948, although that act had been effective since July 28th, 1948; that, by reason of this, it was required to pay an excess of $5,231.96; that it is entitled to have this sum refunded and that defendant be further ordered to correct the records of his department to show that the proper rate of contribution for the period is 0.9% of the wages paid to its employees.
 

 In due course, the defendant Administrator appeared and admitted all the salient facts contained in plaintiffs’ petitions. However, he denied that plaintiffs were entitled to the claimed reductions, contending that he properly computed, on March 31st, 1948, the contribution rate of plaintiffs under the then existing law, Act No. 97 of 1936, as amended by Acts Nos. 181 and 227 of 1946, and not under the 1948 statute which was ineffective with respect to the period October 1-December 31, 1948. Thereafter, the cases were' consolidated for all purposes. The facts were also stipulated, it being agreed that, if Act No. 291 of 1948 became effective on the 20th day after the adjournment of the Legislature, then plaintiffs were entitled to the relief sought, otherwise, judgment should be entered for defendant.
 

 After a hearing in the district court, there was judgment for plaintiffs. Defendant has appealed.
 

 Section 27 of Article 3 of the Constitution declares that all laws enacted shall go into effect “on the twentieth day after the Legislature shall have adjourned”. This provision has been deemed to be without application to statutes in which the effective date has been otherwise fixed by the Legislature. Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49. But, here, the Legislature has not specially prescribed an effective date. Accordingly, the constitutional provision controls and Act No. 291 of 1948 became operative in its entirety on July 28th, 1948, which was the twentieth day after the adjournment of the Legislature. This being so, the statute must be read and given effect in its amended form as to all events occurring after its effective
 
 *137
 
 date. United States v. LaFranca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551 and Blair v. City of Chicago, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801.
 

 Thus, it seems perfectly obvious that, in determining the rate of contribution payable by each employer for the experience rating period October 1-December 31, 1948, the provisions of the amendatory act of 1948, and those provisions exclusively, were applicable. And it makes no difference that the rate for the calendar year 1948 had been previously computed as of March 31st, 1948 by the Administrator or that, in making the computation under the amendatory act, he is required to use March 31st, 1948 as the computation date for the three month experience rating period.
 

 Counsel for defendant nevertheless proclaim that the Legislature did not intend that the amendatory act of 1948 would have effect at any time prior to January 1, 1949 and they predict that dire consequences will beset the administration of the law should the court hold the operative date to be July 28th, 1948, in accordance with the constitutional mandate. We have carefully examined the variform arguments of counsel and find none of them to be impressive. However, because of the apparent earnestness with which the contentions have been presented, we shall attempt to state and dispose of them.
 

 It is initially asserted that the Legislature did not intend that the new definitions contained in the amendatory act would be effective until January 1st, 1949 because the rates of contribution for the calendar quarter October-December 31, 1948 were not changed from the rates of contribution of the fiscal year October 1, 1948-September 30, 1949. The primary answer to this (as well as the other propositions) is that, if the Legislature had not intended the changes to be effective until January 1, 1949, it would have been so easy to say so.
 

 It is next said that to sustain the position of plaintiffs would require the defendant to recompute the tax of all employers subject to the Act for the three years ending March 31, 1948. It does not appear from the facts of the case that an entire recomputation is required but, even if it is, this would not supply an acceptable reason for concluding that the Act did not become operative at the time provided by the Constitution.
 

 Another argument is that, because Section 6(c)(6) of the old law refers to a calendar quarter, whereas the amended section speaks of a calendar year, the intention is evinced that the Act should not take effect until January 1, 1949. We fail to discern the pertinency of this change with respect to the date upon which the Act became effective.
 

 It is also maintained that to give the amendment effect as to the computation on March 31st, 1948 would jeopardize the computations made as of March 31st, 1947 and the contribution rates emanating therefrom
 
 *139
 
 for the period October 1, 1947-September 30, 1948 and would require a new computation respecting the period July 1-Septem-ber 30, 1948. The answer to this is that the present suits do not involve this question; it will be time enough to decide it when and if the issue is raised.
 

 Further arguments are directed to the difficulties, inconvenience and expense to which defendant says his department will be subjected in the event he is required to make the recomputations sought by plaintiffs and other employers similarly situated. These pleas are, of course, without any bearing whatever on the issues of law presented. Since the defendant has forced excessive contributions by reason of his misinterpretation of the effective date of the statute, it is his bounden duty to rectify his error.
 

 The next contention of counsel is that, since the defendant has taken the position that the amendatory act did not take effect until January 1, 1949, the doctrine of contemporaneous construction is germane and governs the decision in the case.
 

 This argument is without merit. The recent and erroneous interpretation of the defendant in this case provides absolutely no basis for application of the rule of contemporaneous construction, aside from the fact that the doctrine is irrelevant where the language of the statute is free from doubt. State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601 and Liquidation of Canal Bank & Trust Co., 211 La. 803, 30 So.2d 841.
 

 Counsel further contend that the saving clause, Section 3 of Act No. 291 of 1948, evinces the intention of the Legislature that the changes in the definitions affecting computations were not to become effective until January 1st, 1949. It declares: “This Act shall repeal all laws or parts of laws in conflict herewith, but shall in no wise be construed as affecting or waiving the right to collect contributions, interest or penalties, or any other rights, that have accrued under Act 97 of 1936 and amendments thereto and re-enactments thereof.”
 

 Far from sustaining the contention, the above-quoted provision expressly repeals all laws in conflict therewith, except as otherwise provided. And, since none of the provisions respecting the definitions used in making computations has been retained, it is plain that the Legislature intended to repeal them and that the new definitions would apply on and after the effective date of the Act. Counsel, however, say that the proviso, that the new Act “shall in no wise be construed as affecting or waiving * * any other rights, that have accrued * *” under the old law, preserves the original computation factor-quotient which defendant has derived by use of the old definitions on the computation date, March 31st, 1948. In arguing thus, counsel erroneously place defendant’s computation in the category of a right accruing under the old law. The
 
 *141
 
 only rights which the Legislature saved under the old law were contributions or taxes which had accrued prior to the effective date of the new Act as the words “or any other rights” are used in association with and limited to “contributions, interest or penalties” that have accrued. Noscitur a sociis. No right “accrued” to use the old definitions in computing future tax rates under the amendatory law. United States v. LaFranca, supra.
 

 Counsel also assert that the amendment of 1948, being clear and explicit, is not subject to interpretation and that, therefore, the new definitions therein contained should be given effect only on and after Januarjr 1st, 1949. We experience much difficulty in discovering the basis for this conclusion. It seems to be the belief of counsel that, by applying the new definitions to events following the effective date of the Act, an unwarranted retroactive effect will be given to the legislation. But this is not so. The new definitions, used for purposes of computation, apply only to rates of contributions accruing after the effective date of the amendatory act.
 

 In support of their manifold postulations, counsel cite and rely upon Southern Ins. Co. v. Board of Assessors, 49 La.Ann. 401, 21 So. 913 and City of New Orleans v. Vergnole, 33 La.Ann. 35.
 

 The first of these cases is utterly without application here. It holds that, where a law provides that a yearly assessment is to begin on a certain date and be completed before another date of a calendar year, it contemplates an assessment oh the basis of the condition of things existing on the first day of the year.
 

 The other case is likewise inapposite. There, the City of New Orleans had levied a license tax prior to the effective date of the Constitution of 1879, wherein political corporations, Article 206, were prohibited from levying a greater license tax than that imposed by the State. The defendant contended that, since the new constitution went into effect before the end of the taxable year and since the City’s levy exceeded that of the State, the tax was not collectible. The court held that the constitutional provision was not to be given a retroactive effect and thereby deny the City its right to collect all taxes levied prio’r to the effective date of the Constitution. In the case at bar, there was no levy of taxes or contributions for the October 1-December 31, 1948 period, prio'r to the effective date of the amendatory act.
 

 Finally, counsel contend that the court below erred in casting defendant for plaintiff’s costs. Section 13 of the Act provides that the Administrator shall not be required to * * pay any costs of court in any legal proceedings, * * Plaintiffs maintain that this provision, when read with other ■ provisions of Section 13 which relieve the Administrator from furnishing "bond, etc., merely exempt him from payment
 
 *143
 
 of court costs for filing suit and that it was never intended that he should not be assessed with the costs of a successful adversary.
 

 Plaintiffs’ contention is not tenable. The provisions of Section 13 of Act No. 291 of 1948 are quite similar to those of Act No. 135 of 1936 which exempt the State and other political subdivisions from the payment of costs in any judicial proceeding. The point tendered, that the provisions do not relieve the Administrator from payment of the costs of a successful opponent, would be interesting in a matter of first impression
 
 [1]
 
 but it is now firmly established that the State and its political subdivisions are exempt from payment not only of their own costs but also for costs expended by litigants successfully prosecuting, claims against them, except in expropiation proceedings. See Westwego Canal & Terminal Co. v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389; Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So. 2d 612; Makofsky v. Dept. of Highways, 205 La. 1029, 18 So.2d 605; Hamberlin v. Tangipahoa Parish School Board, 210 La. 483, 27 So.2d 307 and Brasher v. City of Alexandria (on first hearing), 215 La. 887, 41 So.2d 819.
 

 The judgment appealed from is amended by disallowing the costs and, in all other respects, it is affirmed.
 

 LE BLANC, J., takes no part.
 

 [1]
 

 . See concurring opinion in Westwego Canal & Terminal Co. v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389.