304 So.2d 779 (1974)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff and Appellant,
v.
LAMAR ADVERTISING COMPANY OF LOUISIANA, INC., Defendant and Appellee.
No. 4736.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1974.
Rehearing Denied November 20, 1974.
Alva Jones, La. Dept. of Highways, Baton Rouge, for plaintiff and appellant.
Sanders, Miller, Downing & Kean by R. Gordon Kean, Jr., Baton Rouge, Plauche, Smith & Hebert by Reid K. Hebert, Lake Charles, for defendant and appellee.
Before HOOD, CULPEPPER and DOMENGEAUX, JJ.
*780 CULPEPPER, Judge.
Under Act 474 of 1966, entitled "Control Of Outdoor Advertising And Junkyards", LSA-R.S. 48:461 et seq., the State of Louisiana, through the Department of Highways, filed this suit against Lamar Advertising Company of Louisiana, Inc. to compel the removal of 20 outdoor advertising signs owned by defendant and located along Interstate Highway No. 10 in Calcasieu Parish. This suit was consolidated in the trial court and on appeal with nine other similar suits against other outdoor advertising companies. Separate judgments are being rendered by us this date in each case.
The defendant filed peremptory exceptions of nonjoinder of indispensable parties, no cause or right of action and prescription. These peremptory exceptions were overruled by the district judge. However, defendant's dilatory exception of prematurity was sustained, and plaintiff's suit was dismissed. Plaintiff appealed.
The substantial issue is when Act 474 of 1966 became effective. The plaintiff contends that since there is no express provision in the statute for a special effective date, it became effective at the time provided by the constitution, i. e., 20 days after the Legislature adjourned in 1966. The defendant contends the provisions of the statute as a whole imply the Legislature did not intend it to become effective until the Department of Highways issued certain regulations and/or the State entered into a "compliance agreement" with the Federal Government effective as of January 31, 1972. Since the signs in question were erected before January 31, 1972, defendant contends they were legally erected and the plaintiff cannot require their removal without paying for them. Hence, defendant contends plaintiff's suit to remove the signs is premature until just compensation for the signs is offered.
The history of this statute is that in 1965 the United States Congress enacted the Highway Beautification Act, 23 U.S.C. Section 131, et seq. Its purpose is to establish a control system for outdoor advertising on the interstate and primary highway systems. The states are given the primary task of providing for effective control over this outdoor advertising, consistent with the "national standards" established in the Federal Act. A state which does not establish such controls loses its Federal Aid Funds for highways.
In order to comply with the Highway Beautification Act of 1965, our Louisiana Legislature adopted Act 474 of 1966, LSA-R.S. 48:461 et seq. Since a reading of the statute is important to an understanding of the issues of this case, we quote a large portion thereof as follows:
"§ 461.2. Limitations of Outdoor Advertising Devices
"No outdoor advertising shall be erected or maintained within six hundred sixty feet of the nearest edge of the right of way and visible from the main-traveled way of the interstate or primary highways in this state except the following:
(a) Directional and other official signs and notices, which shall include but not be limited to signs and notices pertaining to natural wonders, scenic and historic attractions, as authorized or required by law.
(b) Signs, displays and devices advertising activities conducted on the property upon which they are located.
(c) Signs, displays and devices advertising the sale or lease of property upon which they are located.
(d) Signs, displays and devices located in areas which are zoned industrial or commercial under authority of law.
(e) Signs, displays and devices in unzoned commercial or industrial areas which areas shall be determined from actual land uses and defined by regulations *781 to be promulgated by the department. Added Acts 1966, No. 474, § 1." (Emphasis supplied)
"§ 461.3. Regulation of advertising

"The department is hereby authorized to promulgate regulations governing the issuance of permits, including the collection of reasonable fees therefor, for the erection and maintenance of outdoor advertising coming within the exceptions contained in subsections (a), (d) and (e) of R.S. 48:461.2, consistent with the safety and welfare of the traveling public, and as may be necessary to carry out the policy of the state as declared in this Park, and consistent with the national standards promulgated by the Secretary of Commerce pursuant to Title 23, United States Code.

"Such regulations shall not exceed the standards required by federal law and the Secretary of Commerce to entitle the department to receive the maximum amount of federal-aid highway funds. Added Acts 1966, No. 474, § 1" (emphasis supplied)
§ 461.4. Recognition of customary uses
"Notwithstanding any other provisions of this act, outdoor advertising shall be permitted in areas zoned industrial or commercial and in unzoned commercial and industrial areas as hereafter defined, subject to the following regulations which are declared to be consistent with customary use in this state:
(a) Lighting
1. No revolving or rotating beam or beacon of light that simulates any emergency light or device shall be permitted as part of any sign. Flashing red, green or amber devices shall not be permitted upon a sign; however, illuminated signs which indicate such customary public service information as time, date, temperature or other similar information shall not be prohibited.
2. External lighting, such as flood lights, thin line and gooseneck reflectors are permitted, provided the light source is directed upon the face of the sign and is effectively shielded so as to prevent beams or rays of light from being directed into any portion of the main traveled way of the interstate or federal-aid primary highway.
3. No sign shall be permitted to project into the direct line of vision of any official traffic control signal, from any point in a moving traffic lane of an interstate or federal-aid primary highway within six hundred sixty feet of and approaching such signal.
(b) Size of Signs
1. For signs which are located within six hundred sixty feet of the nearest edge of the right of way on Interstate and Primary systems the maximum area of a sign face shall be twelve hundred square feet.
2. All dimensions include border and trim, but exclude supports.
3. Double-faced or V-type signs shall be considered one sign structure. Maximum size of signs shall apply to each face. Two signs shall be permitted in any facing provided that the total area of such facing shall not exceed twelve hundred square feet.
4. The highest point of any signs, except roof signs, shall not extend more than sixty feet measured from either the ground level at its supports or the nearest edge of the right of way of the interstate or primary highway, which ever is higher in elevation.
(c) Spacing of Signs
1. Signs shall conform to all applicable building codes and ordinances.
2. No two sign structures facing in the same direction subject to regulations under this act shall be spaced less than *782 one hundred fifty feet apart unless separated by a building, structure, or roadway.
3. All signs are required to maintain the same set-back as other principal buildings and structures or the establishing building lines, whichever is less.
4. No sign may be located in such a manner as to prevent the driver of a vehicle from having a clear, unobstructed view of official signs and approaching merging or intersecting traffic and driveways.
(d) "Commercial and industrial areas' consistent with zoning principles and standards applicable in this state, include: all land so zoned, all unzoned land within one thousand feet of any commercial or industrial activity other than outdoor advertising; all land lying within one thousand feet of any two such unzoned areas; and all other unzoned lands appropriate for outdoor advertising which are determined to be unzoned commercial or industrial areas by any court of this state. (emphasis supplied)
(e) The following signs shall not be permitted:
1. Signs which are obsolete.
2. Signs which are illegal under state law or regulations.
3. Signs that are not clean and in good repair.
4. Signs that are not securely affixed to a substantial structure.
5. Signs which attempt or appear to attempt to regulate, warn, or direct the movement of traffic or which interfere with, imitate or resemble any official traffic sign, signal, or device.
6. Signs which are erected or maintained upon trees or painted or drawn upon rocks or other natural features.
7. Signs which are not consistent with the standards in this Part.

The department, however, is authorized to modify, vary or supplement the above restrictions if necessary to comply with the standards approved by the Congress of the United States and to insure that the department will receive the maximum amount of federal-aid funds as provided in the Federal Highway Beautification Act of 1965. Added Acts 1966, No. 474, § 1." (emphasis supplied)
* * * * * *
"§ 461.15 Agreements with federal government

"The department may enter into agreements with the Secretary of Commerce, as provided by Title 23, United States Code, relating to the control of outdoor advertising and of junkyards in areas adjacent to the Interstate and Primary systems, including the establishment and operation of information centers at safety rest areas, and may take action in the name of the State to comply with the terms of such agreement. Added Acts 1966, No. 474, § 1." (emphasis supplied)
The district judge sustained the exception of prematurity on the grounds that the statute did not become effective until the "compliance agreement" authorized by R.S. 48:461.15 between the Department of Highways and the Secretary of Commerce became effective on January 31, 1972. The district judge stated in his written reasons:
"It is apparent that since no regulations were adopted pursuant to section 461.2 until the effective date of the "compliance agreement" with the federal government the Act could not have been effective until that time. Similarly, since no regulations were promulgated to govern the issuance of permits under Section 461.3, it is obvious that it was impossible to comply with the Act.

*783 "Also, since no formal, fixed standards have ever been established by the federal government or Secretary of Commerce, the Louisiana standards could not be legally promulgated because according to section 461.3 they must not exceed the non-existent federal standards.
"Further, no court has ever determined what constitutes unzoned commercial or industrial areas under section 461.4.
"The court concludes that the Highway Department's failure to timely promulgate these regulations rendered the entire Act inoperative until the effective date of the `compliance agreement.'"
On appeal, the Highway Department first cites LSA-La. Const. Art. 3, Section 27 which provides in pertinent part:
"All laws enacted shall go into effect at twelve o'clock, noon, on the twentieth day after the Legislature shall have adjourned."
Our jurisprudence is established that this constitutional provision applies to all statutes except those in which a different effective date is expressly stated, or where the provisions of the statute clearly imply that a different effective date was intended by the Legislature, Gulf Shipside Storage Corporation v. Thames, 217 La. 128, 46 So.2d 62 (1960); Board of Trustees of Firemen's Pension and Relief Fund v. City of New Orleans, 217 So.2d 766 (La.App. 4th Cir. 1969).
The statute in question here contains no provision expressly fixing an effective date other than the usual date provided by the constitution. Nevertheless, the defendant contends, and the trial court held, that certain provisions of the act imply a legislative intent that it not become effective until the "compliance agreement" became effective on January 31, 1972. Defendant's first argument in support of this position is that the statute could not become operative until the Department of Highways promulgated regulations under LSA-R.S. 48:461.2(e). This is one of the five exceptions to the prohibition against outdoor advertising within 660 feet of the interstate highway, and reads as follows: "Signs, displays and devices in unzoned commercial or industrial areas which areas shall be determined from actual land uses and defined by regulations to be promulgated by the department." The defendant argues that without regulations by the Highway Department defining "unzoned commercial or industrial areas which areas shall be determined "from actual land uses", there were no standards or regulations by which the defendants could be guided in the erection of signs.
The answer to this argument is that LSA-R.S. 48:461.4(d) expressly defines both zoned and unzoned commercial and industrial areas as follows:
"`Commercial and industrial areas' consistent with zoning principles and standards applicable in this state, include: All land so zoned, all unzoned land within one thousand feet of any commercial or industrial activity other than outdoor advertising; all land lying within one thousand feet of any two such unzoned areas; and all other unzoned lands appropriate for outdoor advertising which are determined to be unzoned commercial or industrial areas by any court of this state."
We cannot agree that the statute implies a legislative intent that it not become effective until the Department of Highways issued regulations defining "unzoned commercial or industrial areas." The statute itself, in R.S. 48:461.4(d), defines these "unzoned commercial or industrial areas" with sufficient certainty that counsel for any outdoor advertising company could have informed his clients as to where he could and could not erect signs on interstate highways.
In addition, under the other provisions of LSA-R.S. 48:461.4, entitled "Recognition Of Customary Uses", our Legislature *784 set out in detail the regulations as to lighting, size of signs, spacing of signs and as to certain types of signs which will not be permitted. All of this particularity as to where signs are prohibited, where they are permitted and the types of signs permitted indicates that the Legislature intended the act to become effective in 1966. These provisions are clear and were enforceable without any further regulations by the Department of Highways.
In Board of Trustees of Firemen's Pension and Relief Fund v. City of New Orleans, 217 So.2d 766 (La.App. 4th Cir. 1969), writ refused, 253 La. 876, 220 So.2d 459 (1969), the court said: "Had the legislature intended that the act not become effective until January 1, 1968, it could have so provided, and the city's representatives in the legislature could have requested that the effective date be so delineated." In the present case, if the Legislature had not intended the statute to become effective until the Highway Department issued further regulations or until the compliance agreement was entered into, it would have been very simple for the Legislature to state this in the statute. The courts should not imply that the Legislature intended a special effective date unless such implication is so clear as to admit of no other reasonable interpretation.
In its brief filed in this Court, plaintiff points out that most of the language of the statute in question is taken from a model act submitted to the State of Louisiana by counsel for the United States Government. Counsel notes particularly that Section 461.4, quoted above, is not in the model act. It must be assumed that it was placed in our statute by our Legislature for a purpose. Plaintiff correctly suggests that the reason could logically be that since the Legislature intended the statute to take effect immediately, it was necessary to set out in greater detail the definition of "unzoned commercial or industrial areas which shall be determined from actual land uses" and to provide definite regulations as to lighting, spacing of signs, types of signs, etc., which would be permitted.
The district court in its decision points to the fact that Section 461.4(d) adds a final clause to its definition of commercial and industrial areas stating "and all other unzoned lands appropriate for outdoor advertising which are determined to be unzoned commercial or industrial areas by any court of this state." The argument is that this renders the statute ineffective because no court has yet determined what constitutes unzoned lands appropriate for outdoor advertising.
The plaintiff suggests a reasonable legislative intent for this provision is that outdoor advertising will be allowed in areas which the court might find to be appropriate for such outdoor advertising, under the general guidelines set out in the act, even though the land is unzoned for commercial or industrial uses. The Highway Department suggests in argument that this is a "catch-all" provision added to the act by the advertising industry. Insofar as the basic issue before us is concerned, i. e., whether the provision tends to show a clear legislative intent that the statute not become effective until some later special date, we believe the provision is irrelevant and immaterial. It certainly does not show the Legislature intended the statute to remain ineffective until a court defined these terms.
The district court relied on the case of Summerell v. Phillips, La., 282 So.2d 450 (1973). In that case, a property owner sought a writ of mandamus ordering issuance of a permit for a mobile home park. The court held that since the ordinance provided no objective standards for the establishment of such zones, but, instead, granted the city-parish council the free and unfettered discretion to grant or deny each individual application, the ordinance was unconstitutional. A person could not read the ordinance and determine what the standards were for a mobile home park. The Summerell case is readily distinguished *785 from the present matter. Here, we are not concerned with a zoning ordinance. Furthermore, the statute at issue here contains definite and uniform regulations as to outdoor advertising. For the reasons stated above, any party engaged in outdoor advertising was sufficiently informed by the statute as to where he could and could not erect signs and as to the types of signs, etc. As to our own Louisiana Constitution, we have a specific constitutional amendment validating the act with which we are concerned in these proceedings, LSA-La. Const. Art. 6, Sec. 19.3 et seq.
The defendant argues further that the provisions of LSA-R.S. 48:461.3 authorizing the Department of Highways to promulgate regulations governing the issuance of permits for outdoor advertising, shows a legislative intent that the statute not become effective until such regulations for permits were promulgated. Defendant also argues that the provision of LSA-R.S. 48:461.3, in the second paragraph, that any regulations for permits issued by the Highway Department "shall not exceed the standards required by federal law and the Secretary of Commerce to entitle the department to receive the maximum amount of federal-aid highway funds", shows a legislative intent that the statute not become effective until the Secretary of Commerce completed his regulations. Defendant also argues that the provisions of LSA-R.S. 48:461.15 authorizing the Department of Highways to enter into agreements with the Secretary of Commerce, shows an intent that the statute not take effect until such an agreement was entered into.
We are unable to agree with these arguments. If our Legislature had intended that the effective date of this statute be delayed until the Department of Highways issued its regulations regarding permits, or until the Secretary of Commerce issued his final regulations, or until the compliance agreement was signed, then it would have been a simple matter for the Legislature to state in the statute that it would not become effective until these were accomplished by the respective agencies. In the absence of such an express provision in the statute as to a special effective date, these provisions do not show a clear legislative intent that the effective date of the statute be postponed.
A further strong answer to these arguments is that under our Constitution the Legislature determines when a statute shall become effective. No state agency or official or any other party can change the effective date of a statute as fixed by the Legislature. To argue that the entire statute remained "inoperative", a term used in the district judge's written reasons, until the Department of Highways issued its regulations for permits or until the Department of Highways issued further regulations defining terms or until the Department entered into the compliance agreement would be equivalent to saying that the Department of Highways could change the effective date of the statute by deciding when to perform these tasks. Under such a theory, the Department of Highways could even nullify the act entirely by indefinitely failing or refusing to issue regulations or perform acts authorized by the statute. It is obvious that this would amount to usurpation of legislative power by a subservient state agency, in contravention of the constitution.
A similar argument was made in Gulf Shipside Storage Corporation v. Thames, 217 La. 128, 46 So.2d 62 (1950) in which the plaintiff sued the defendant Administrator of the Division of Employment Security to recover alleged overcharges. Arguments were made that the statute requiring increases in unemployment compensation contributions did not become effective because the Administrator himself attempted to postpone the effective date and because of certain difficulties, inconvenience and expense which would result if the act took effect before certain procedural changes were made by the Department. In *786 rejecting these arguments, the court held that the Legislature had not fixed a special effective date for the statute and therefore it became effective on the date established by the Constitution, i. e., 20 days after the Legislature adjourned. The argument that the Administrator of the Division of Employment Security could change the effective date under the doctrine of contemporaneous construction was rejected. The court held that the primary answer to all of these arguments is that "if the Legislature had not intended the changes to be effective until January 1, 1949, it would have been so easy to say so."
The defendant cites the recent case of State of Vermont v. Claude S. Brinegard, No. 6809 on the docket of the United States District Court for the District of Vermont, decided on July 17, 1974, but not yet reported. A copy of the decision is attached to defendant's brief. That case is readily distinguished from the present matter. It stands only for the proposition that the state must pay for legal but non-conforming signs. The State of Vermont had failed to make provisions to pay for the removal of outdoor advertising signs which were legal but non-conforming. The Federal Statute requires that such payment be made. The case is not authority for any of the issues involved here.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff overruling defendant's exception of prematurity. This case is remanded to the district court for further proceedings in accordance with law and the views expressed herein. All costs of this appeal are assessed against the defendant appellee.
Reversed and remanded.
DOMENGEAUX, J., dissents and assigns written reasons.
DOMENGEAUX, Judge (dissenting).
I am of the opinion, as was the trial judge, that the exception of prematurity should be maintained. I adopt the portion of his written reasons on that subject, as follows:
". . . . .
The exception of prematurity is not supported by any of the reasons herein-before advanced. The defendants do establish, however, a commanding argument when they say that conforming to the statute was a formidable task, perhaps unconstitutionally warranted, before the execution of the `compliance agreement' on January 31, 1972.
For example, LSA-R.S. 48:461.2 stipulates that no outdoor advertising shall be erected or maintained within six hundred sixty feet of the nearest edge of the right of way and visible from the maintraveled way of the interstate or primary systems. The statute then grants five exceptions, one of which includes signs, displays and devices in unzoned commercial or industrial areas, `which areas shall be determined from actual land uses and defined by regulations to be promulgated by the department'. (Emphasis added)
LSA-R.S. 48:461.3 authorizes the department to promulgate regulations governing the issuance of permits, including the collection of reasonable fees for such permits, for the erection and maintenance of outdoor advertising coming within certain exceptions enumerated in Section 461.2. Such regulations are to be consistent with the safety and welfare of the traveling public and the national standards promulgated by the Secretary of Commerce pursuant to 23 U.S.C.A. Sec. 101 et seq.
The concluding paragraph of Sec. 461.3 states that these regulations shall not exceed the standards required by federal law and the Secretary of Commerce *787 to entitle the department to receive the maximum amount of federalaid highway funds.
Section 461.4 allows outdoor advertising in areas zoned commercial or industrial and to unzoned commercial and industrial areas `as hereafter defined'. Thereafter, in subsection (d), the statute provides that commercial and industrial areas include `all other unzoned lands appropriate for outdoor advertising which are determined to be unzoned commercial or industrial areas by any court of this state'.
It is apparent that since no regulations were adopted pursuant to section 461.2 until the effective date of the `compliance agreement' with the federal government the Act could not have been effective until that time. Similarly, since no regulations were promulgated to govern the issuance of permits under section 641.3, it is obvious that it was impossible to comply with the Act.
Also, since no formal, fixed standards have ever been established by the federal government or Secretary of Commerce, the Louisiana standards could not be legally promulgated because according to section 461.3 they must not exceed the non-existent federal standards.
Further, no court has ever determined what constitutes unzoned commercial or industrial areas under section 461.4.
The court concludes that the Highway Department's failure to timely promulgate these regulations rendered the entire Act inoperative until the effective date of the `compliance agreement'.
The recent decision of Summerell v. Phillips, 282 So.2d 450 ([La.] 1973) and the provisions of LSA-Const. Art. 6, Sec. 19.3 add weight to the conclusion that the Act was inoperative.
LSA-Const. Art. 6, Sec. 19.3 is of course the constitutional ratification of the Control of Outdoor Advertising and Junkyards Act. Section 19.3 provides that such zoning authority authorized under it shall be consistent with the lawful exercise of zoning authority vested in the municipalities and parishes of the state.
In Summerell the Supreme Court per Justice Dixon held:
`A zoning ordinance which contains no standard for the uniform exercise of the power to grant or deny applications for permits is unconstitutional. To be constitutional, a zoning ordinance must be sufficiently definite to notify citizens of their rights pursuant to the ordinance and must establish sufficiently definite and adequate standards to govern officials with respect to the uniform treatment of applications for permits under the ordinance.' (Citations omitted)
This decision appears directly analogous to the issue with which we are confronted. Certainly Section 461.3, as it relates to the issuance of permits for those advertising signs allowed by the statute, is directly affected. In addition, Sections 461.2 and 461.4 cannot be deemed `sufficiently definite and adequate' in the absence of the authorized regulations.
The Summerell reasoning applied to this Act causes the court to conclude that it was inoperative until the establishment of definite and adequate regulations, which did not occur until the `compliance agreement' of January 31, 1972.
. . . . ."
I respectfully dissent.