356 So.2d 557 (1978)
STATE of Louisiana Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
NATIONAL ADVERTISING COMPANY, Defendant-Appellant.
No. 6272.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1978.
Rehearing Denied March 29, 1978.
*559 Sanders, Downing, Kean & Cazdessus by R. Gordon Kean, Jr., Baton Rouge, Plauche, Smith, Hebert & Nieset by Reid K. Hebert, Lake Charles, for defendants-appellants.
Jonathan C. Harris, Baton Rouge, for plaintiff-appellee.
Before GUIDRY, FORET and JOHNSON, JJ.
FORET, Judge.
The State of Louisiana, through the Department of Highways instituted this suit against National Advertising Company pursuant to LSA-R.S. 48:461 et seq., entitled "Control of Outdoor Advertising and Junkyards," to compel the removal of numerous outdoor advertising signs owned by defendant along Interstate Highways Nos. 10 and 210 in Calcasieu Parish. This suit was consolidated, in the trial court and on appeal, with eight other similar suits against other *560 outdoor advertising companies. Separate judgments are being rendered on this date in each case.
This litigation has previously been before this court on an exception of prematurity where we held that the effective date of LSA-R.S. 48:461 et seq. was July 27, 1966. State of Louisiana, Through the Department of Highways v. Lamar Advertising Company of Louisiana, Inc., 304 So.2d 779 (La.App. 3 Cir. 1974), writs refused La., 305 So.2d 539. All of the signs in question were erected between July 27, 1966 and January 31, 1972, the latter being the date of the "compliance agreement" between the State of Louisiana and the U. S. Department of Transportation. These dates are significant because it is during this "hiatus" period that appellant contends there were no effective rules determining what areas were appropriate for outdoor advertising. The issues presented on this appeal are:
(1) Is appellant entitled to a judicial determination of what constitutes an "unzoned commercial or industrial area appropriate for outdoor advertising" pursuant to LSA-R.S. 48:461.4(d)? If so, what criteria should govern that determination?
(2) Is the doctrine of equitable estoppel applicable?
(3) Whether State standards exceeded Federal regulations in violation of LSA-R.S. 48:461.3 at the time these signs were erected?
(4) Whether these signs are "legal" by virtue of the "compliance agreement"?
(5) Has the State's cause of action, by virtue of LSA-R.S. 48:461 et seq., prescribed pursuant to LSA-R.S. 9:5625?
(6) Does LSA-R.S. 48:461 et seq. violate the First and Fourteenth Amendments to the U. S. Constitution and the corresponding provisions of the 1921 and 1974 Louisiana Constitutions?
(7) Does LSA-R.S. 48:461 et seq. unconstitutionally delegate legislative authority to an administrative agency?
A brief history of LSA-R.S. 48:461 et seq. is necessary in order to provide a better understanding of the disposition of this case. In 1965 the U. S. Congress enacted the "Highway Beautification Act," 23 U.S.C. § 131 et seq., in order to encourage the states to control outdoor advertising along the interstate and primary highway systems, in a manner consistent with a "national policy" declared in the act. After January 1, 1968, the Secretary of Commerce (now, Transportation) was authorized to reduce the federal aid highway funds, which would otherwise be apportioned to a state, by 10% If the Secretary determined the state had not made provision for effective control of outdoor advertising. 23 U.S.C. § 131(b).
In response to the stimulus provided by the "Highway Beautification Act", the Louisiana Legislature adopted Act 474 of 1966, presently LSA-R.S. 48:461 et seq. The purpose of the Act is stated generally in LSA-R.S. 48:461 as follows:
"The Legislature finds and declares that outdoor advertising and maintenance of junkyards are legitimate commercial uses of private property and, for the purpose of promoting the public safety, health, welfare, convenience and enjoyment of public travel, to protect the public investment in public highways, and to preserve and enhance the scenic beauty of lands bordering public highways, it is hereby declared to be in the public interest to regulate and restrict the erection and maintenance of outdoor advertising and the establishment, operation and maintenance of junkyards in areas adjacent to the Interstate and Primary Highway Systems within this State."
In order to provide the proper background for the sections of the statute at issue here, we quote a large portion of it as follows:
§ 461.2 Limitations of outdoor advertising devices
No outdoor advertising shall be erected or maintained within six hundred sixty feet of the nearest edge of the right of way and visible from the main-traveled way of the interstate or primary highways in this state except the following:

*561 (a) Directional and other official signs and notices, which shall include but not be limited to signs and notices pertaining to natural wonders, scenic and historic attractions, as authorized or required by law.
(b) Signs, displays and devices advertising activities conducted on the property upon which they are located.
(c) Signs, displays and devices advertising the sale or lease of property upon which they are located.
(d) Signs, displays and devices located in areas which are zoned industrial or commercial under authority of law.
(e) Signs, displays and devices in unzoned commercial or industrial areas which areas shall be determined from actual land uses and defined by regulations to be promulgated by the department. (Emphasis added.)
§ 461.3 Regulation of advertising
The department is hereby authorized to promulgate regulations governing the issuance of permits, including the collection of reasonable fees therefor, for the erection and maintenance of outdoor advertising coming within the exceptions contained in subsections (a), (d) and (e) of R.S. 48:461.2, consistent with the safety and welfare of the traveling public, and as may be necessary to carry out the policy of the state as declared in this Part, and consistent with the national standards promulgated by the Secretary of Commerce pursuant to Title 23, United States Code.

Such regulations shall not exceed the standards required by federal law and the Secretary of Commerce to entitle the department to receive the maximum amount of federal-aid highway funds. (Emphasis added.)
§ 461.4 Recognition of customary uses
Notwithstanding any other provisions of this act, outdoor advertising shall be permitted in areas zoned industrial or commercial and in unzoned commercial and industrial areas as hereafter defined, subject to the following regulations which are declared to be consistent with customary use in this state:
(a) Lighting
1. No revolving or rotating beam or beacon of light that simulates any emergency light or device shall be permitted as part of any sign. Flashing red, green or amber devices shall not be permitted upon a sign; however, illuminated signs which indicate such customary public service information as time, date, temperature or other similar information shall not be prohibited.
2. External lighting, such as flood lights, thin line and gooseneck reflectors are permitted, provided the light source is directed upon the face of the sign and is effectively shielded so as to prevent beams or rays of light from being directed into any portion of the main traveled way of the interstate or federal-aid primary highway.
3. No sign shall be permitted to project into the direct line of vision of any official traffic control signal, from any point in a moving traffic lane of an interstate or federal-aid primary highway within six hundred sixty feet of and approaching such signal.
(b) Size of Signs
1. For signs which are located within six hundred sixty feet of the nearest edge of the right of way on Interstate and Primary systems the maximum area of a sign face shall be twelve hundred square feet.
2. All dimensions include border and trim, but exclude supports.
3. Double-faced or V-type signs shall be considered one sign structure. Maximum size of signs shall apply to each face. Two signs shall be permitted in any facing provided that the total area of such facing shall not exceed twelve hundred square feet.
4. The highest point of any signs, except roof signs, shall not extend more than sixty feet measured from either the ground level at its supports or the nearest edge of the right of way of the interstate or primary highway, which ever is higher in elevation.
*562 (c) Spacing of signs
1. Signs shall conform to all applicable building codes and ordinances.
2. No two sign structures facing in the same direction subject to regulations under this act shall be spaced less than one hundred fifty feet apart unless separated by a building, structure, or roadway.
3. All signs are required to maintain the same set-back as other principal buildings and structures or the establishing building lines, whichever is less.
4. No sign may be located in such a manner as to prevent the driver of a vehicle from having a clear, unobstructed view of official signs and approaching merging or intersecting traffic and driveways.
(d) "Commercial and industrial areas" consistent with zoning principles and standards applicable in this state, include: all land so zoned, all unzoned land within one thousand feet of any commercial or industrial activity other than outdoor advertising; all land lying within one thousand feet of any two such unzoned areas; and all other unzoned lands appropriate for outdoor advertising which are determined to be unzoned commercial or industrial areas by any court of this state.
(e) The following signs shall not be permitted:
1. Signs which are obsolete.
2. Signs which are illegal under state laws or regulations.
3. Signs that are not clean and in good repair.
4. Signs that are not securely affixed to a substantial structure.
5. Signs which attempt or appear to attempt to regulate, warn, or direct the movement of traffic or which interfere with, imitate or resemble any official traffic sign, signal, or device.
6. Signs which are erected or maintained upon trees or painted or drawn upon rocks or other natural features.
7. Signs which are not consistent with the standards in this Part.

The department, however, is authorized to modify, vary or supplement the above restrictions if necessary to comply with the standards approved by the Congress of the United States and to insure that the department will receive the maximum amount of federal-aid funds as provided in the Federal Highway Beautification Act of 1965. (Emphasis added.)

* * * * * *
§ 461.6 Compensation for removal of advertising
The department shall acquire by donation, purchase, lease, exchange or expropriation and, where required by state or federal law, shall pay just compensation upon the removal of the following outdoor advertising signs, displays and devices:
(a) Those lawfully in existence on the effective date of this Part;
(b) Those lawfully on any highway made a part of the interstate or primary systems on or after the effective date of this Part and before January 1, 1968; and
(c) Those lawfully erected on or after January 1, 1968.
Such just compensation is authorized to be paid only for the taking from the owner of such sign, display or device of all right, title, leasehold and interest in such sign, display or device; and the taking from the owner of the land on which the sign, display or device is located of the right to erect and maintain such signs, displays and devices thereon.
However, notwithstanding the above provisions, such payment shall be made by the department upon the removal of any sign, display or device erected along the interstate or primary systems prior to January 31, 1972 if seventy-five percent of the cost thereof is made available from federal sources.
§ 461.7 Unlawful advertising

Unlawful advertising shall be any sign, display or device which violates the provisions of this Part. The department shall give thirty days notice, by certified mail, to the owner of such device to remove same if it is a prohibited device or cause *563 it to conform to regulations if it is an authorized device. If the owner of such device fails to act within thirty days, as required in the notice, the department shall remove the advertising device at the expense of the owner thereof.

* * * * * *
§ 461.15 Agreements with federal government
The department may enter into agreements with the Secretary of Commerce, as provided by Title 23, United States Code,1 relating to the control of outdoor advertising and of junkyards in areas adjacent to the Interstate and Primary systems, including the establishment and operation of information centers at safety rest areas, and may take action in the name of the State to comply with the terms of such agreement.
The first issue presented involves the interpretation of LSA-R.S. 48:461.4(d) which provides in part: "`Commercial and industrial areas' consistent with zoning principles and standards applicable in this state, include;. . . all other unzoned lands appropriate for outdoor advertising which are determined to be unzoned commercial or industrial areas by any court of this state." The prohibition contained in section 461.2 does not apply to signs in "unzoned commercial or industrial areas." LSA-R.S. 48:461.2(e), 461.4(d). Appellant suggests that the signs in question were located in such an area and that we can now make the determination envisioned by the statute in order to find that these signs were "lawfully" erected, entitling appellant to just compensation for their removal. LSA-R.S. 48:461.6.
In order to ascertain the meaning of Section 461.4(d), it is necessary to discuss the "compliance agreement" between Louisiana and the Federal Government which was signed on January 31, 1972. LSA-R.S. 48:461.15 authorized the Louisiana Department of Highways (department) to enter into such an agreement with the Secretary of Commerce (Succeeded by the Secretary of Transportation). Section 1(D) of the agreement defined "unzoned commercial or industrial areas" as follows:
"Unzoned commercial or industrial areas mean those areas which are not zoned by State or local law, regulation, or ordinance and on which there is located one or more permanent structures devoted to a commercial or industrial activity or on which a commercial or industrial activity is actually conducted, whether or not a permanent structure is located thereon, and the area along the highway extending outward 800 feet from and beyond the edge of such activity. Each side of the highway will be considered separately in applying this definition.
"All measurements shall be from the outer edges of the regularly used buildings, parking lots, storage or processing, and landscaped areas of the commercial or industrial activities, not from the property lines of the activities, and shall be along or parallel to the edge of pavement of the highway."
No mention of the judicial determination provided by Section 461.4(d) is repeated in the compliance agreement. It is apparent that the department has the power to vary the restrictions contained in LSA-R.S. 48:461.4 if necessary to comply with federal standards and insure that the department will receive the maximum amount of federal aid funds available. LSA-R.S. 48:461.4 (last paragraph). Additionally, the statute envisions departmental regulations, not exceeding federal standards, consistent with the safety and welfare of the traveling public and the national standards promulgated by the Secretary of Commerce. LSA-R.S. 48:461.3. It is undisputed that no regulations were promulgated by the department prior to the January 31, 1972 signing of the compliance agreement. More specifically, no regulations were enacted defining what constitutes an "unzoned commercial or industrial area" by virtue of the authority provided by LSA-R.S. 48:461.2(e). However, when this litigation was previously before this Court, we stated:
"We cannot agree that the statute implies a legislative intent that it not become *564 effective until the Department of Highways issued regulations defining `unzoned commercial or industrial areas.' The statute itself, in R.S. 48:461.4(d), defines these `unzoned commercial or industrial areas' with sufficient certainty that counsel for any outdoor advertising company could have informed his clients as to where he could and could not erect signs on interstate highways." (Emphasis added.) State of Louisiana, Through the Department of Highways v. Lamar Advertising Co. of La., Inc., supra.
No court in Louisiana has ever determined what constituted "unzoned commercial or industrial areas" under section 461.4(d). The trial judge held that it was too late for appellant to obtain a section 461.4(d) judicial determination. We agree.
In the recent case of Hiway-Ads, Inc. v. State of Louisiana, Through the Department of Highways, 356 So.2d 501 (La. App. 1 Cir. 1977), the First Circuit Court of Appeal held that a section 461.4(d) judicial determination must be made prior to the erection of the sign. If this is not done and the signs are not authorized under any other provision of the statute, then they are considered unlawful. The court further stated: "The statute with its provisions for the issuance of permits for signs in accepted areas certainly envisions a prior judicial determination of the areas accepted under R.S. 48:461.4(d)." We believe this view is consistent with the discussion above concerning the delegation of authority to the department in the statute itself. The judicial determination provided by Section 461.4(d), in light of the statute as a whole, was meant to be used prior to the erection of a sign during the "hiatus" period from July 27, 1966, to January 31, 1972, when no departmental regulations on the subject existed. Since appellant did not utilize section 461.4(d) at the appropriate time, their signs must be considered unlawful. It follows that appellant is not entitled to compensation for the removal of unlawful signs. LSA-R.S. 48:461.7; 461.6.
Since we hold that appellant is not entitled to a judicial determination of what constitutes unzoned commercial and industrial areas appropriate for outdoor advertising, it is not necessary for us to consider what criteria should govern that determination.
The second issue presented concerns the applicability of the doctrine of equitable estoppel. Appellant contends that it relied upon the assurances of Frank Taylor, a Louisiana Highway Department official who died in 1972, to the effect that the department did not consider the statute effective until the compliance agreement was signed. Those signs which were later found to be in violation of the statute would be removed with the provision that the owners would be entitled to compensation, just as in an expropriation case. It is appellant's contention, therefore, that if the signs are required to be removed, equitable estoppel mandates that the state pay compensation for their removal.
There are three elements of equitable estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975); Westenberger v. State, Department of Education, 333 So.2d 264 (La.App. 1 Cir. 1976). One who seeks to avail himself of the application of the principle must establish his right to do so with unusual clearness. Rodden v. Davis, 293 So.2d 578 (La.App. 3 Cir. 1974), writ denied La., 296 So.2d 832. To raise an equitable estoppel, the record must establish not only that the pleader relied upon a representation or other conduct, but also that he was justified in doing so. Justifiable reliance is fundamental. American Bank and Trust Company v. Trinity Universal Insurance Co., 251 La. 445, 205 So.2d 35 (La.1967); Porter v. Travelers Indem. Co., 313 So.2d 641 (La.App. 3 Cir. 1975); Westenberger v. State, Dept. of Education, supra. The burden of proving the facts to establish estoppel rests on the one relying on the doctrine. Union Oil Co. of California v. Touchet, 229 La. 316, 86 So.2d 50 (La. *565 1956); United Gas Pipeline Co. v. Bellard, 286 So.2d 109 (La.App. 3 Cir. 1973). The doctrine of equitable estoppel applies to the state to the same extent as it does to individuals. State ex rel. Shell Oil Co. v. Register of State Land Office, 193 La. 883, 192 So. 519 (La.1939); Prebensen & Blakstad v. Board of Commissioners, 241 F.Supp. 757 (1965).
The trial court concluded that appellant had not proven facts supporting equitable estoppel with sufficient clarity to establish the right to utilize the doctrine. We believe that the trial judge thoroughly explored this factual defense and correctly resolved this issue.
Several advertising executives testified that Mr. Taylor assured them that they would be entitled to compensation for the removal of the signs built during the "hiatus" period which were later discovered to be in violation of the statute. The trial court accepted their testimony at face value even though Mr. Taylor was unable to testify at trial. Be that as it may, the fallacy in appellant's argument lies in what we find to be the appellant's unjustified reliance upon the representations of Mr. Taylor, who was not highly placed in the hierarchy of department officials. Grady Carlisle, traffic and planning engineer for the department and Mr. Taylor's immediate supervisor, testified that Mr. Taylor's duties consisted of directing the permit and beautification unit of the department. Prior to 1966, his primary responsibility concerned the issuance of driveway permits, overweight load permits and operation of utility permits. He continued performing these duties in addition to the assigned beautification functions from 1966 to 1972. Mr. Taylor was in charge of making a complete inventory of the location, spacing, and size of all signs along the interstate and primary highway systems. At no time did Mr. Taylor's responsibility include negotiating with the Department of Transportation. His duties could best be described as clerical in nature with minimal responsibility with regard to the Beautification Act.
It is of some significance to note that the advertising executives who claim they were misled were probably the most knowledgable people in the state when Act 474 of 1966 was passed. Ross Bannister, former chief counsel for the department, testified that he had never had so much help drafting a bill as he did on this one. He was referring to the assistance he received by the various advertising people and their attorneys who are involved in this case. Mr. Bannister testified that once the legislation was endorsed by the department and the advertising industry, passage of the bill was assured. It is difficult for this Court to imagine that the advertising executives involved in this case would rely upon Mr. Taylor's assurance and disregard the abundance of other information at their disposal.
The third issue presented is whether state standards exceeded federal regulations in violation of LSA-R.S. 48:461.3 at the time these signs were erected. It is undisputed that there were no federal standards defining an unzoned commercial and industrial area between passage of Act 474 of 1966 and the signing of the compliance agreement on January 31, 1972. Appellant argues that since state standards could not exceed federal standards by virtue of the last paragraph of LSA-R.S. 48:461.3 and no federal standards existed during this period, no viable prohibitions existed against the erection of the signs in issue.
We find appellant's contention without merit for several reasons. First, there is no "national standard" or federal definition of unzoned commercial or industrial areas. Such definitions are created only by virtue of agreements (such as the compliance agreement here) between the various states and the U.S. Secretary of Transportation. Second, the restrictions of section 461.3 are directed toward the regulatory power of the department, not to the regulations contained in the statute itself. Third, the limitation refers to national standards for the lighting, size, number, and spacing of directional and official signs which the Secretary of Transportation was authorized to promulgate by 23 U.S.C. *566 § 131(c)(1). Fourth, state standards could not exceed federal regulations if the latter were non-existent at the time. Therefore, the national standards referred to do not play a role in determining the legality of the signs at issue in this appeal.
Appellant's next contention is that the compliance agreement "legitimated" or "grandfathered" the signs in question. This argument ignores the plain meaning of the sections of the compliance agreement relied upon. Section IV of that agreement provides in part:
"The provisions contained herein pertaining to the size, lighting, and spacing of outdoor advertising signs permitted in zoned and unzoned commercial and industrial areas shall apply only to those signs erected subsequent to the effective date of this agreement . . ." (emphasis added.)
Section V states that the effective date of the agreement is January 31, 1972. The above quoted section did not have the effect of legitimating signs which were unlawful because of their location, but only pertains to the size, lighting and spacing of outdoor signs.
Appellant suggests, in the alternative, that the state's cause of action has prescribed by virtue of LSA-R.S. 9:5625, which provides in part:
"All actions civil or criminal, created by statute, ordinance or otherwise, . . . which may be brought by parishes, municipalities or their instrumentalities or by any person, firm or corporation to require enforcement of and compliance with any zoning restriction . . ., imposed by any parish, municipality or their instrumentalities . . ., must be brought within two years from the first act constituting the commission of the violation . . . ." (emphasis added.)
The clear and unambiguous language of the statute shows that it only applies to the enforcement of zoning laws imposed by parishes, municipalities and their instrumentalities. The statute does not direct itself to the restrictions placed on outdoor advertising by the state or any of its agencies.
Appellant's constitutional assault on LSA-R.S. 48:461 et seq. based upon the First and Fourteenth Amendments to the U. S. Constitution and the corresponding provisions of the 1921 and 1974 Louisiana Constitutions can be subdivided into three categories: First Amendment rights; deprivation of property without the payment of compensation; and, denial of equal protection.
Appellant correctly states that commercial speech is subject to some governmental regulation, but that such regulation is not without restraint. In Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the U.S. Supreme Court stated:
"In concluding that commercial speech, like other varieties, is protected, we of course do not hold that it can never be regulated in any way. Some forms of commercial speech regulations are surely permissible."

* * * * * *
"We have often approved restrictions of that kind [time, place and manner restrictions] provided that they serve a significant governmental interest, and in so doing they leave open ample alternative channels for communication of the information." See also Linmark Associates, Inc. v. Town of Willingboro, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977).
We believe that the statute withstands appellant's First Amendment attack for two reasons. First, there remains open "ample alternative channels for communication of the information." Not all outdoor advertising along the interstate highways is prohibited by the statute. "On premises" signs along with those in zoned commercial and industrial areas are permissible under the statute. LSA-R.S. 48:461.2(b) and 461.2(d). In addition, signs in unzoned commercial and industrial areas as defined by the compliance agreement are not prohibited. LSA-R.S. 48:461.2(e). Second, the statute is genuinely concerned with the geographical location of "speech" in order to promote *567 legitimate governmental interests which are unrelated to the suppression of free expression. The legislature has stated that the control of outdoor advertising promotes "the public safety, health, welfare, convenience and enjoyment of public travel . . . [and] preserve[s] and enhance[s] the scenic beauty of lands bordering public highways." LSA-R.S. 48:461.
Appellant also argues that the statute deprives it of property without the payment of just compensation. Since we have found that the signs in question were erected unlawfully, appellant's argument is without merit. The state is clearly not compelled to compensate one for the removal of property which was built in derogation of a valid law.
Additionally, appellant contends that LSA-R.S. 48:461 et seq. violates the state and federal constitutions by denying it the right to engage in lawful business and arbitrarily classifying otherwise lawful pursuits. Appellant argues that the statute contains arbitrary distinctions such as permitting "on premises signs" while prohibiting identical signs which happen to be "off premises"; and only prohibiting signs located adjacent to interstate or primary highways while permitting identical signs located elsewhere.
In City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), the U.S. Supreme Court stated:
"When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. See e. g. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step-by-step, Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966), in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. See, e. g., Williamson v. Lee Optical Co., 348 U.S. 483, 488-489, 75 S.Ct. 461, 464-65, 99 L.Ed. 563 (1955). In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines, see, e. g. Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 423, 72 S.Ct. 405, 407, 96 L.Ed. 469 (1952), in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment. See, e. g., Ferguson v. Skrupa, 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963)." [Footnote omitted]
The legislature declared the purpose of the statute in LSA-R.S. 48:461, supra (see the discussion pertaining to appellant's First Amendment attack). We find the restrictions imposed by the statute to be "rationally related to a legitimate state interest". The fact that aesthetic values are promoted in conjunction with the furtherance of safety of travel on the public ways does not indicate an abuse of the police power. City of Shreveport v. Brock, 230 La. 651, 89 So.2d 156 (La.1956). In addition, the U.S. Supreme Court has stated:
"The concept of the public welfare is broad and inclusive. See Day-Brite Lighting, Inc. v. State of Missouri, 342 U.S. 421, 424, 72 S.Ct. 405, 407, 96 L.Ed. 469. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as *568 healthy, spacious as well as clean, well-balanced as well as carefully patrolled . . ." Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954).
We hold that the purposes of the statute expressed in LSA-R.S. 48:461 are within the legitimate scope of the police power. At the very least, the statute is sustainable as a "one step at a time" reform. Hiway-Ads, Inc. v. State of Louisiana, supra; See, Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
It is of some import to us that several other jurisdictions have upheld their respective outdoor advertising statutes against due process and equal protection attacks. Markham Advertising Co. v. State of Washington, 73 Wash.2d 405, 439 P.2d 248 (Wash. 1968), appeal dismissed 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 512, rehearing denied, 393 U.S. 1112, 89 S.Ct. 854, 21 L.Ed.2d 813; E. B. Elliott Adv. Co. v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir. 1970); Howard v. State Department of Highways of Colorado, 478 F.2d 581 (10th Cir. 1973); Mississippi State Highway Commission v. Roberts Enterprises, Inc., 304 So.2d 637 (Miss.1974); National Advertising Co. v. State Highway Department, 230 Ga. 119, 195 S.E.2d 895 (Ga.1973).
The final issue presented is whether LSA-R.S. 48:461 et seq. constitutes an unlawful delegation of authority to an administrative agency. Appellant contends that the statute is unconstitutional because it contains a total abdication of legislative authority.
Appellant's argument overlooks the fact that the source of the department's power lies in the constitution itself. La.Const.1921 art. VI, § 19.3. Appellant suggests that the pertinent 1972 regulation defining "unzoned commercial and industrial area" is subject to attack because the provisions of former Article VI, § 19.3 are now statutory. La.Const.1974 art. XIV, § 16. This argument ignores the fact that this litigation, and the action complained of, both occurred prior to the effective date of the new constitution. Such an interpretation is contrary to La.Const.1974 art. XIV, § 26 which prohibits the retroactive application of the 1974 constitution. In addition, the last paragraph of Article VI, § 19.3 of the 1921 constitution, specifically "validated and ratified" any similar legislation adopted at the regular session of the Legislature in 1966. We believe that any possible taint of impermissible power was removed thereby.
For the reasons assigned, the judgment of the trial court ordering the defendant to remove its signs in accordance with LSA-R.S. 48:461.7, is affirmed. All costs of this appeal are assessed to the appellants in these consolidated cases, each appellant to bear costs equal to the proportion which the number of signs in issue owned by it bears to the total number of signs in issue owned by all the appellants.
AFFIRMED.